COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)

Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
ARTHUR C. LEAHY
MATTHEW P. MONTGOMERY
ALEXANDRA S. BERNAY
LUCAS F. OLTS
THOMAS G. WILHELM
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

## _"DOCUMENT ELECTRONICALLY FILED"_

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>PHARMACIA CORPORATION, et al.,<br><br>     Defendants. | No. 03-1519 (AET)<br>**(Consolidated)**<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>ORAL ARGUMENT REQUESTED<br>RETURN DATE TO BE ASSIGNED |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .............................. 1

II.   FACTUAL BACKGROUND ......................................................... 2

III.  THE PROPOSED CLASS REPRESENTATIVES ........................................ 6

IV.   ARGUMENT ..................................................................... 7

    A.    Class Certification Is Particularly Appropriate in Securities Actions ................................................................... 7

    B.    The Requirements of Rule 23(a) Are Satisfied ................................... 9

        1.    Numerosity ..................................................... 9

        2.    Commonality .......................................................... 11

        3.    Typicality................................................................ 12

        4.    The Pension Funds Will Fairly and Adequately Protect the Interests of the Class............................................. 14

            a.    The Pension Funds' Counsel Are Qualified to Represent the Class ....................................... 14

            b.    There Are No Antagonistic Interests Among Class Members....................................................... 15

    C.    The Requirements of Rule 23(b)(3) Are Satisfied ............................. 15

        1.    Common Issues Predominate.................................... 16

        2.    This Class Action Is Manageable and Superior to Other Available Methods................................................ 17

V.    CONCLUSION ......................................................... 18

# TABLE OF AUTHORITIES

**Page**

*Baby Neal for & by Kanter v. Casey,*
    43 F.3d 48 (3d Cir. 1994)...................................................................... 11, 13

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988).............................................................................. 7, 17

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985).................................................................................. 7

*Blue Chip Stamps v. Manor Drug Stores,*
    421 U.S. 723 (1975).................................................................................. 7

*Brosious v. Children's Place Retail Stores,*
    189 F.R.D. 138 (D.N.J. 1999).................................................................. 11

*Chin v. Chrysler,*
    182 F.R.D. 448 (D.N.J. 1998).................................................................. 16

*Cromer Fin. Ltd. v. Berger,*
    205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................ 14

*Eisenberg v. Gagnon,*
    766 F.2d 770 (3d Cir. 1985)............................................................ 8, 16, 18

*Epstein v. Moore,*
    No. 87-2984 (AET), 1988 U.S. Dist. LEXIS 5450
    (D. N.J. June 13, 1988) ............................................................................ 13

*In re AremisSoft Corp. Sec. Litig.,*
    210 F.R.D. 109 (D.N.J. 2002)............................................................ 9, 14, 16

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001)...................................................................... 7

*In re Centocor, Inc. Sec. Litig. III,*
    No. 98-260, 1999 U.S. Dist. LEXIS 1224
    (E.D. Pa. Jan. 27, 1999) .......................................................................... 10

**Page**

*In re Cephalon Sec. Litig.*,
    No. 96-0633, 1998 U.S. Dist. LEXIS 12321
    (E.D. Pa. Aug. 11, 1998)....................................................................... 13

*In re Data Access Sys. Sec. Litig.*,
    103 F.R.D. 130 (D.N.J. 1984)....................................................................... 16

*In re Electro-Catheter Sec. Litig.*,
    No. 87-41, 1987 U.S. Dist. LEXIS 13500
    (D.N.J. Dec. 3, 1987) ....................................................................... 13

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)....................................................................... 14

*In re Honeywell Int'l Inc.*,
    211 F.R.D. 255 (D.N.J. 2002)............................................................*passim*

*In re NeoPharm, Inc. Sec. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004)....................................................................... 14

*In re Pharmaprint, Inc. Sec. Lit.*,
    No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845
    (D.N.J. Apr. 17, 2002) ....................................................................... 9, 16

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998)....................................................................... 16

*In re Res. Am. Sec. Litig.*,
    202 F.R.D. 177 (E.D. Pa. 2001)....................................................................9, 11, 14

*In re Vicuron Pharms. Inc. Sec. Litig.*,
    No. 04-2627, 2006 U.S. Dist. LEXIS 3861
    (E.D. Pa. Feb. 1, 2006)....................................................................... 14, 15

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ....................................................................... 6, 15

Page

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ................................................................................................ 7

*Kahan v. Rosenstiel*,
    424 F.2d 161 (3d Cir. 1970) ................................................................................ 18

*Kline v. First Western Gov't Sec., Inc.*,
    No. 83-1076, 1995 U.S. Dist. LEXIS 19223
    (E.D. Pa. Dec. 20, 1995) ..................................................................................... 12

*Moskowitz v. Lopp*,
    128 F.R.D. 624 (E.D. Pa. 1989) .......................................................................... 12

*Rendler v. Gambone Bros. Dev. Co.*,
    182 F.R.D. 152 (E.D. Pa. 1998) .......................................................................... 14

*Rosen v. Fidelity Fixed Income Trust*,
    169 F.R.D. 295 (E.D. Pa. 1995) .......................................................................... 18

*Seidman v. Am. Mobile Sys.*,
    157 F.R.D. 354 (E.D. Pa. 1994) .......................................................................... 11

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) ................................................................................ 17

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ................................................................................ 10

*Weikel v. Tower Semiconductor, Ltd.*,
    183 F.R.D. 377 (D.N.J. 1998) ............................................................................. 10

*Weiss v. York Hospital*,
    745 F.2d 786 (3d Cir. 1984) ................................................................................ 11

**Page**

*Yang v. Odom,*
     392 F.3d 97 (3d Cir. 2004), *cert. denied,*
     2005 U.S. Dist. LEXIS 4196
     (U.S. May 23, 2005).................................................................... 8

*Zlotnick v. Tie Communications, Inc.,*
     123 F.R.D. 189 (E.D. Pa. 1988)................................................ 17

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
     Rule 23 ................................................................................... 2
     Rule 23(a)........................................................................ 1, 9, 15
     Rule 23(a)(2) ......................................................................... 11
     Rule 23(b)(3).................................................................*passim*

17 C.F.R.
     §240.10b-5 ...................................................................... 1, 9, 14

15 U.S.C.
     §78j(b) ...................................................................................... 1
     §78t(a) ...................................................................................... 1

## SECONDARY AUTHORITIES

3B J. Moore,
     *Moore's Federal Practice* ¶23.05[1] (2d ed. 1982)....................... 10

1 Herbert B. Newberg & Alba Conte,
     *Newberg on Class Actions*, §3.10 (3d ed. 1992)........................... 11

H.R. Conf. Rep. No. 104-369 (1995),
     *reprinted in* 1995 U.S.C.C.A.N. 679, 730 ...................................... 7

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Alaska Electrical Pension Fund, City of Sarasota Firefighters' Pension Fund, International Union of Operating Engineers Local 132 Pension Plan, New England Health Care Employees Pension Fund, PACE Industry Union-Management Pension Fund and Chemical Valley Pension Fund of West Virginia[1] ("the Pension Funds") bring this securities fraud class action on behalf of all purchasers of securities (the "Class") of Pharmacia Corporation ("Pharmacia") between April 17, 2000 and May 31, 2002 (the "Class Period"). The Pension Funds assert that Pharmacia and certain of its officers and directors made materially false and misleading statements throughout the Class Period in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5. *See, e.g.*, ¶¶81-86, 88-89.[2] The Pension Funds further assert that defendants' false and misleading statements caused Pharmacia stock to trade at artificially inflated prices during the Class Period, so that the Pension Funds and other members of the proposed Class suffered damages as a result of purchasing Pharmacia stock.

---

[1]    Chemical Valley Pension Fund of West Virginia was not appointed lead plaintiff in this action, but is moving to be appointed as a class representative.

[2]    All references to the Consolidated Complaint for Violation of the Federal Securities Laws (the "Complaint") will be set forth as "¶__" or "¶¶__." All emphasis is added and citations are omitted unless otherwise stated.

Pursuant to Federal Rule of Civil Procedure 23, the Pension Funds move this Court for entry of an Order certifying this action as a class action and certifying the Pension Funds as Class representatives.  Excluded from the proposed Class are defendants, the officers and directors of Pharmacia during the Class Period, members of their immediate families, and their legal representatives, heirs, successors, or assigns and any entity in which any of the defendants have or had a controlling interest.

Lead Plaintiffs also seek an order appointing (1) the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as Lead Class Counsel and (2) the law firm of Cohn Lifland Pearlman Herrmann & Knopf LLP as Liaison Class Counsel.

As set forth fully below, all of the criteria for class certification are satisfied here, such that the Court may properly certify the Class and appoint the Pension Funds as Class representatives.

## II.    FACTUAL BACKGROUND

In February 1999, Pharmacia launched its new drug, Celebrex, which was to be used as an alternative to traditional non-steroidal anti-inflammatory drugs ("NSAIDs") for use in reducing inflammation in patients suffering from arthritis. ¶2. Celebrex was marketed by defendants as the equivalent of NSAIDs, such as ibuprofen, except that, unlike ibuprofen, defendants claimed that Celebrex could reduce pain and inflammation without the gastrointestinal ("GI") side-effects

associated with traditional NSAIDs. ¶3. However, because Celebrex's GI safety advantage had never been clinically proven, the Food and Drug Administration ("FDA") mandated that defendants provide a warning label with Celebrex, similar to those carried by ibuprofen. *Id.*

In order to remove the FDA-mandated warning label, Pharmacia granted and funded the Celecoxib Long-Term Arthritis Safety Study (the "CLASS study") to compare GI problems of patients who used Celebrex with patients who used other NSAIDs. ¶4. The purported results of the CLASS study were announced in an article written by Pharmacia consultants and employees that appeared in the *Journal of the American Medical Association* ("JAMA"). *Id.* The JAMA article reported that patients who took Celebrex had fewer GI side-effects than those who took other traditional NSAIDs. *Id.* Defendants distributed over 30,000 copies of the JAMA article to doctors throughout the country. *Id.*

Defendants also stated in press releases, financial statements, conferences, articles and conference calls that the CLASS study had proven that Celebrex was safer than traditional NSAIDs. ¶¶36, 39, 41, 44-45, 47-48, 54-56, 60, 67. Financial analysts repeated defendants' statements to the market, artificially inflating Pharmacia's stock price. ¶¶7, 37-38, 40, 42-43, 49, 51, 58.

In fact, contrary to defendants' public statements, the CLASS study as originally designed did ***not*** demonstrate a superior GI safety profile for Celebrex over traditional NSAIDs. ¶5. The CLASS study was conducted as two separate trials: one

- 3 -

15-month trial comparing Celebrex to ibuprofen and a separate 12-month trial comparing Celebrex to diclofenac. *Id.* After the trials were complete, the data, when analyzed according to the protocol established before the study began, showed that Celebrex's GI safety profile was no better than the other two drugs. *Id.* Rather than release these results to the public, defendants manipulated the study protocol, the data and the comparison criteria in order to improve Celebrex's apparent performance. *Id.* First, defendants arbitrarily used only the first six months of data, discarding entirely the second six months of data regarding diclofenac and the last nine months of data regarding ibuprofen, data which showed that Celebrex had no GI safety advantage at all. ¶6. Defendants then changed the criteria by which Celebrex was compared to the other drugs in order to favor Celebrex. *Id.* Only after defendants had manipulated the data, protocol and criteria to obscure Celebrex's true performance did they present the CLASS study to the public. *Id.* However, the truth was that the complete CLASS study data, when analyzed pursuant to the original CLASS protocol, did not demonstrate a superior GI safety profile for Celebrex. *Id.*

On August 5, 2001, *The Washington Post* ran an exposé concerning defendants' deceptive disclosure of only the most favorable CLASS data. ¶9. In that article, M. Michael Wolfe, a Boston University Gastroenterologist who had written an editorial that accompanied and praised the JAMA article, was quoted as saying: "***We were flabbergasted ... I am furious ... I wrote the editorial. I looked like a fool ... [b]ut ... all I had available to me was the data presented in the article***." *Id.* JAMA's editor,

- 4 -

Catherine D. DeAngelis, said the journal's editors were not informed about the missing data. "I am disheartened to hear that they had those data at the time that they submitted [the manuscript] to us," she said. *"We are functioning on a level of trust that was, perhaps, broken." Id.*

Defendants fiercely denied the allegations of wrongdoing, claiming – falsely – that the study included only the first six months of data because after six months more patients had withdrawn from the comparison groups than from the Celebrex group, thus compromising the reliability of the data after six months. ¶10. Based on defendants' false explanations and denials, the market discounted *The Washington Post* article, such that Pharmacia's stock continued to trade at artificially inflated prices. *Id.*

Finally, on June 1, 2002, *The British Medical Journal* published an article which asserted that, contrary to defendants' explanations, there was no valid reason to exclude the second six months of data from the CLASS study. ¶11. The article concluded that defendants' statements were "misleading," and that, based on the CLASS study data, Celebrex was no safer than drugs like ibuprofen. *Id.*

Once the public learned that Celebrex, Pharmacia's largest-selling drug, was no better than ibuprofen but cost 60-100 times more, and that defendants had misleadingly manipulated the CLASS study data, Pharmacia's stock dropped from $40.596 to $36.563 in a few trading days, causing innocent investors untold losses. ¶12.

On June 10, 2002, *The Washington Post* ran a story comparing the events at

Pharmacia to those at Enron:

> Pharmacia Corp. funded a study to show that a medicine called Celebrex
> works better than cheap alternatives such as ibuprofen. The study
> collected 12 months of data, which suggested no Celebrex advantage.
> So ***the authors selectively published the first six months of results,***
> ***which purported to show that Celebrex had fewer side effects. In 2001***
> ***alone, this Arthur Andersen-type trick caused patients to spend $3***
> ***billion unnecessarily***.

¶14. On June 24, 2002, *Business Week* ran an article in which JAMA deputy editor

Drummond Rennie stated that the study's authors, including Pharmacia, "***were not***

***open with us ... [t]hey signed letters saying the studies have all the relevant stuff,***"

but "***they had contradictory results when they sent us this paper, and they should***

***have revealed them to us. And they didn't.***" ¶15.

### III. THE PROPOSED CLASS REPRESENTATIVES

The proposed class representatives in this case are responsible for administering

the pensions for thousands of people throughout the United States. Collectively, they

manage billions of dollars in assets and are extraordinarily well-qualified to represent

the Class. Indeed, the Pension Funds are the exact type of institutional investors that

Congress sought to empower by the enactment of the Private Securities Litigation

Reform Act of 1995 ("PSLRA"). *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267,

282 (S.D.N.Y. 2003) ("The PSLRA was designed to 'increase the likelihood that

institutional investors will serve as lead plaintiffs.'"); *In re Cendant Corp. Litig.*, 264

F.3d 201, 261 (3d Cir. 2001) (noting that the PSLRA was intended to encourage

- 6 -

institutional investors to participate in securities class actions in part because they are "experienced and sophisticated consumers of legal services"). Accordingly, the Pension Funds are ideal candidates to serve as Class representatives in this action.

## IV.    ARGUMENT

### A.    Class Certification Is Particularly Appropriate in Securities Actions

The Supreme Court has stated, "we repeatedly have emphasized that implied private actions provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). *See also Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (private actions for violations of the Exchange Act constitute an "essential tool for enforcement of the 1934 Act's requirements"); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975).

Congress reaffirmed the importance of private enforcement of the securities laws when it enacted the PSLRA:

> ***Private securities litigation is an indispensable tool with which defrauded investors can recover their losses without having to rely upon government action.*** Such private lawsuits promote public and global confidence in our capital markets and help to deter wrongdoing and to guarantee that corporate officers, auditors, directors, lawyers and other properly perform their jobs.

H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730.

- 7 -

Courts in the Third Circuit view the class action tool as "'particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" *Yang v. Odom*, 392 F.3d 97, 109 (3d Cir. 2004), *cert. denied*, 2005 U.S. Dist. LEXIS 4196 (U.S. May 23, 2005); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws . . . ."); *see also In re Honeywell Int'l Inc.*, 211 F.R.D. 255, 267 (D.N.J. 2002) (acknowledging that "the Court of Appeals' generally favorable view of class actions for the adjudication of securities fraud claims"). Accordingly, the Third Circuit has explicitly recognized that any doubt as to the propriety of certification should be resolved in favor of certifying the Class, because denying class certification will almost certainly terminate the action and be detrimental to the members of the Class. *See Eisenberg*, 766 F.2d at 785.

The Complaint here asserts that defendants made material statements that misled investors concerning the GI safety of Celebrex compared to competitor drugs, artificially inflating the price of Pharmacia stock. Consistent with the Supreme Court and Third Circuit's recognition of the critical role that private class actions play in enforcing the securities laws, cases involving precisely this type of securities fraud are frequently certified. *See, e.g., Honeywell*, 211 F.R.D. at 268 (certifying class in case where false and misleading statements artificially inflated stock price); *In re*

- 8 -

*AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 112-13, 135 (D.N.J. 2002) (certifying class of persons who purchased company's common stock and were damaged as a result of defendants' false and misleading statements); *In re Pharmaprint, Inc. Sec. Lit.*, No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845, at *11-*13 (D.N.J. Apr. 17, 2002) (certifying class of plaintiffs bringing 10b-5 claims); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 179, 192 (E.D. Pa. 2001) (certifying class of investors who alleged that defendants made false and misleading statements, resulting in an artificial inflation of stock prices). Like the securities fraud cases cited above, this action is ideally suited to class treatment and should be certified as a class action.

**B.     The Requirements of Rule 23(a) Are Satisfied**

Rule 23(a) lists four criteria that must be met in order for a case to proceed as a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each of these requirements is satisfied here.

**1.     Numerosity**

Plaintiffs need not prove the exact size of the proposed Class, but rather must demonstrate only that the number is sufficiently large, making joinder impracticable. "'Impracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the class calls for class certification.'"

*Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 388 (D.N.J. 1998); *see also*

*Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of

plaintiffs is required to maintain a suit as a class action, but generally if the named

plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first

prong of Rule 23(a) has been met."); *In re Centocor, Inc. Sec. Litig. III*, No. 98-260,

1999 U.S. Dist. LEXIS 1224, at \*4-\*5 (E.D. Pa. Jan. 27, 1999) ("There are no specific

standards regarding class size and it is not necessary for a plaintiff to allege the exact

number of class members to satisfy the numerosity requirement.").

In this case, the Forms 10-K Pharmacia filed with the SEC state that there were

at least 35,009 shareholders of common stock as of December 31, 1999, at least

76,355 shareholders of common stock as of December 31, 2000 and at least 72,007

shareholders of common stock as of December 31, 2001. *See* Declaration of Lucas F.

Olts, Counsel to Plaintiffs, in Support of Plaintiffs' Motion for Class Certification

("Olts Decl."), Ex. A at 14 (excerpt of 1999 Form 10-K), Ex. B at 26 (excerpt of 2000

Form 10-K) and Ex. C at 15 (excerpt of 2001 Form 10-K); *see also* ¶31. Courts in the

Third Circuit have routinely certified classes comprised of hundreds of individuals or

even fewer than 100 individuals. *See, e.g., Weiss v. York Hospital*, 745 F.2d 786, 808

(3d Cir. 1984) (class with as few as 92 members certified); *Brosious v. Children's

Place Retail Stores*, 189 F.R.D. 138, 145 (D.N.J. 1999) (estimate of "hundreds of

members of the class" sufficiently numerous); 3B J. Moore, *Moore's Federal Practice*

¶23.05[1], at 23-150 (2d ed. 1982) ("numbers in excess of forty, particularly those

exceeding one hundred or one thousand have sustained the requirement"); *Honeywell*, 211 F.R.D. at 260 (numerosity satisfied where defendant company was a large and prominent publicly held company and its public filings confirmed that there were thousands of shareholders); *see also Brosious*, 189 F.R.D. at 146 (applying Fifth Circuit's presumption that Rule 23(a) is satisfied in securities suits involving nationally traded stocks). Accordingly, there can be no legitimate dispute in this case that the proposed Class meets the numerosity requirement.

### 2.    Commonality

Rule 23(a)(2) requires that the complaint raise questions of law or fact which are common to the class. *Res. Am.*, 202 F.R.D. at 181; 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §3.10, at 3-47 (3d ed. 1992). However, "[a]llegations of a common course of fraudulent conduct generally satisfy the commonality requirement." *Seidman v. Am. Mobile Sys.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994). Indeed, the commonality requirement is satisfied where the named plaintiffs share only one common question of law or fact. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Allegations that a company "and its management omitted material information from its public disclosures thereby inflating the price of ... stock is the paradigmatic common question of law or fact in a securities fraud class action." *Moskowitz v. Lopp*, 128 F.R.D. 624, 629 (E.D. Pa. 1989). *See Kline v. First Western Gov't Sec., Inc.*, No. 83-1076, 1995 U.S. Dist. LEXIS 19223, at *12-*13 (E.D. Pa. Dec. 20, 1995) ("Whether fraudulent

- 11 -

misrepresentations and/or material omissions were contained in ... opinion letters and ... materials – – are issues common to all class members. Indeed, these are the paradigmatic issues in securities fraud class action cases.").

Like the cases cited above, this case presents numerous common questions of law **and** fact, including:

- Whether the federal securities laws were violated by defendants' acts alleged in the Complaint;

- Whether the defendants participated in a common course of conduct to conceal adverse material information about Celebrex;

- Whether statements made by defendants to the investing public during the Class Period misrepresented material facts about Pharmacia and Celebrex;

- Whether defendants' material misrepresentations artificially inflated the price of Pharmacia stock;

- Whether defendants acted with scienter in knowingly or recklessly omitting and/or misrepresenting material facts regarding Pharmacia and Celebrex; and

- Whether the proposed Class members sustained damages, and if so, the proper measure of such damages.

¶¶34, 81-86. These issues of law and fact are common to all members of the Class, such that this action satisfies the commonality requirement.

### 3. Typicality

"Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal*, 43 F.3d at 55. A finding of typicality

will generally not be precluded even if there are "pronounced factual differences ...

where there is a strong similarity of legal theories." *In re Cephalon Sec. Litig.*, No.

96-0633, 1998 U.S. Dist. LEXIS 12321, at *7 (E.D. Pa. Aug. 11, 1998) (citing *Baby

Neal*, 43 F.3d at 58).   "In addition, it must be remembered that the focus is on

defendant's behavior, not that of plaintiff, and on whether the class can point to the

same general, over-all course of fraudulent conduct." *Epstein v. Moore*, No. 87-2984

(AET), 1988 U.S. Dist. LEXIS 5450, at *6 (D. N.J. June 13, 1988); *In re Electro-

Catheter Sec. Litig.*, No. 87-41, 1987 U.S. Dist. LEXIS 13500, at *8 (D.N.J. Dec. 3,

1987).

Typicality is clearly satisfied here since the Pension Funds' claims arise from

the same course of conduct that gave rise to the claims of all other Class members and

are based on the same legal theory.   The Pension Funds, like all Class members,

purchased Pharmacia stock during the Class Period unaware that defendants had made

materially false and misleading statements that had artificially inflated the price of that

stock, and were damaged thereby.[3]   All Class members were damaged in exactly the

---

[3]      The fact that the Pension Fund plaintiffs made purchases of Pharmacia through
investment managers does not render them atypical of other class members. *See In re
Vicuron Pharms. Inc. Sec. Litig.*, No. 04-2627, 2006 U.S. Dist. LEXIS 3861, at *16
(E.D. Pa. Feb. 1, 2006) ("If an institutional investor cannot be a class representative
simply because it turned over day-to-day investment decisions to professional money
managers or advisors, few if any institutional investors could be class representatives
in any securities action.   Such a result is contrary to the intentions of Congress
embodied in the PSLRA that institutional investors should oversee more securities

same manner, such that the typicality requirement is met. *See AremisSoft*, 210 F.R.D. at 121 (typicality satisfied in 10b-5 action, alleging defendants' misstatements artificially inflated company's stock).

### 4.    The Pension Funds Will Fairly and Adequately Protect the Interests of the Class

The Third Circuit has articulated two criteria for determining the adequacy of representation: (a) that the plaintiffs' attorney is competent to conduct a class action; and (b) that the class representatives do not have interests antagonistic to the interests of the class. *See Res. Am.*, 202 F.R.D. at 187; *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800-01 (3d Cir. 1995); *Rendler v. Gambone Bros. Dev. Co.*, 182 F.R.D. 152, 159 (E.D. Pa. 1998). Both criteria are satisfied in this case.

### a.    The Pension Funds' Counsel Are Qualified to Represent the Class

The Pension Funds' counsel are well-qualified to represent the Class in this action, and have presented the Court with evidence of their extensive experience in securities, class action and complex civil litigation, as well as their successful prosecution of similar actions in various state and federal courts throughout the United States. *See Vicuron*, 2006 U.S. Dist. LEXIS 3861, at *17 (finding Lerach Coughlin to

---

actions."); *In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 567 (N.D. Ill. 2004) ("to prohibit . . . an institutional investor from serving as a class representative merely because it delegated investment responsibilities to a money manager would appear be in tension with the PSLRA"); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 132 (S.D.N.Y. 2001) (use of investment advisors not disqualifying).

be "sufficiently experienced and qualified to conduct this securities fraud class action"); Olts Decl., Exs. D-E. The Pension Funds' counsel will continue to zealously prosecute this action on behalf of the proposed Class, and, as such, are qualified to serve as Class counsel.

### b.     There Are No Antagonistic Interests Among Class Members

As a result of defendants' false and misleading statements, the Class representatives and all members of the Class suffered damages due to the artificially inflated price of Pharmacia stock. ¶¶81-86, 88-89. Accordingly, all Class members have a similar interest in establishing the liability of defendants and the injury they suffered, such that there is no antagonism between the Pension Funds and the rest of the Class members. *See WorldCom*, 219 F.R.D. at 282.

### C.     The Requirements of Rule 23(b)(3) Are Satisfied

In addition to the requirements for certification set forth in Rule 23(a) discussed above, this case satisfies Rule 23(b)(3), which provides that a class should be certified if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). Here, common questions of law and fact predominate, such that the class action mechanism is clearly the most appropriate method for litigating this action.

### 1.    Common Issues Predominate

The predominance test is readily met in securities fraud actions. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 314 (3d Cir. 1998). *See, e.g., Pharmaprint*, 2002 U.S. Dist. LEXIS 19845, at *19 ("Common issues are predominant in this litigation based on Lead Plaintiffs' allegation that Defendants made material misrepresentations to the general investing public."); *Chin v. Chrysler*, 182 F.R.D. 448, 453 (D.N.J. 1998) ("Common questions of law may be said to predominate when significant legal issues are common to each class member's cause of action or to the defense of such claims."); *AremisSoft*, 210 F.R.D. at 122 ("Although individual damage claims will differ depending on when and what type of stock was acquired, these issues cast no doubt on the finding of predominance."); *Eisenberg*, 766 F.2d at 786; *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 138-40, 142 (D.N.J. 1984). Here, as discussed above, the claims asserted raise questions of fact and law common to all class members. As such, common issues predominate.[4]

---

[4]    When a securities fraud claim is based on a fraud on the market theory – as here (*see* ¶¶78-79) – it is presumed that common issues of reliance predominate over any individual issues. *See Honeywell*, 211 F.R.D. at 266 ("there is no reason at [the class certification] stage of the case to conclude that individual questions of reliance predominate over common questions, and such individual issues of reliance accordingly do not represent an impediment to class certification"); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 178 (3d Cir. 2000); *Basic*, 485 U.S. at 242; *Zlotnick v. Tie Communications, Inc.*, 123 F.R.D. 189, 194-95 (E.D. Pa. 1988).

### 2.     This Class Action Is Manageable and Superior to Other Available Methods

In this case, as with securities litigation in general, class action treatment is superior to other available methods for the fair and efficient adjudication of this case. Rule 23(b)(3) provides the following criteria for a Court to consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Here, the proposed Class members have a significant interest in proceeding as a class because it would undoubtedly be economically burdensome for individual plaintiffs to proceed individually, given the millions of dollars necessary to prosecute this case and the relatively small losses suffered by many individual Class members. In addition, plaintiffs' counsel is unaware of any other actions pending which seek the same relief based on the same conduct alleged in this action. Moreover, New Jersey is a desirable forum because defendant Pharmacia was headquartered in New Jersey, and much of the alleged wrongdoing occurred here, while the Class is large and spread throughout the United States. In cases like this, courts in the Third Circuit have recognized that class actions are superior devices for efficiently managing litigation. *See, e.g., Honeywell*, 211 F.R.D. at 267 (class action appropriate given the size and geographical dispersion of the proposed class and the great possibility that proposed

- 17 -

class members will have sustained small losses); *Eisenberg*, 766 F.2d at 785 ("Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'") (quoting *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970)); *Rosen v. Fidelity Fixed Income Trust*, 169 F.R.D. 295, 301 (E.D. Pa. 1995) ("[C]lass certification remains a desirable method of seeking redress under the securities laws, particularly where, as here, 'a large number of individuals have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.'") (quoting *In re Regal Communications Corp. Sec. Litig.*, No. 94-179, 1995 U.S. Dist. LEXIS 13492, at *20 (E.D. Pa. Sept. 12, 1995)). Finally, the Pension Funds' counsel, which prosecutes many such class actions, anticipates no difficulties in managing this case as a class action.

As in the above-cited cases, class action treatment is superior to any other available method for the fair and efficient adjudication of this action, such that the requirements of Rule 23(b)(3) are satisfied.

## V.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this action be certified as a class action under Fed. R. Civ. P. 23(b)(3) on behalf of the Class as defined in the Pension Funds' motion, that the Pension Funds be certified as

representatives of the Class, and that the Pension Funds' counsel be certified as class

counsel.

DATED:  April 3, 2006                          Respectfully submitted,

                                                COHN LIFLAND PEARLMAN
                                                  HERRMANN & KNOPF LLP
                                                PETER S. PEARLMAN


                                                _____
                                                        PETER S. PEARLMAN

                                                Park 80 Plaza West-One
                                                Saddle Brook, NJ  07663
                                                Telephone:  201/845-9600
                                                201/845-9423 (fax)

                                                Liaison Counsel

                                                LERACH COUGHLIN STOIA GELLER
                                                  RUDMAN & ROBBINS LLP
                                                WILLIAM S. LERACH
                                                ARTHUR C. LEAHY
                                                MATTHEW P. MONTGOMERY
                                                ALEXANDRA S. BERNAY
                                                LUCAS F. OLTS
                                                THOMAS G. WILHELM
                                                655 West Broadway, Suite 1900
                                                San Diego, CA  92101
                                                Telephone:  619/231-1058
                                                619/231-7423 (fax)

                                                Lead Counsel for Plaintiffs

                                                SCOTT + SCOTT, LLC
                                                ARTHUR L. SHINGLER III
                                                ANITA MELEY LAING
                                                600 B Street, Suite 1500
                                                San Diego, CA  92101
                                                Telephone:  619/233-4565
                                                619/233-0508 (fax)

SCOTT + SCOTT, LLC
DAVID R. SCOTT
108 Norwich Avenue
Colchester, CT  06415
Telephone:  860/537-3818
860/537-4432 (fax)

Attorneys for Plaintiffs