# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **ALASKA ELECTRICAL PENSION FUND, et. al.,** | : : : : | **Civil Action No.:03-1519(AET)** |
| **Plaintiffs,** | : : | |
| **v.** | : : | **OPINION AND ORDER** |
| **PHARMACIA CORPORATION, et. al.,** | : : | |
| **Defendants.** | : : | |

## I.  INTRODUCTION

Currently before the Court is a Motion filed by Plaintiffs, Alaska Electrical Pension Fund, et. al. (hereinafter "Plaintiffs"), for leave to take eighty fact depositions in Plaintiffs' securities fraud suit against Pharmacia Corporation, et. al. (hereinafter "Defendants" or "Pharmacia").  In the underlying case, Plaintiffs assert that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, by making materially false and misleading statements between April 17, 2000 and May 31, 2002, (hereinafter "the Class Period") regarding the results of a clinical study of Plaintiffs' product, Celebrex.  For the following reasons, the Motion to Grant Leave is DENIED.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Pharmacia launched the Nonsteroidal Anti-Inflammatory Drug (hereinafter "NSAID") Celebrex in February of 1999 for use in reducing inflamation in patients suffering from osteoarthritis or rheumatoid arthritis.  (Consolidated Complaint For Violation of the Federal Securities Laws at ¶ 2)(hereinafter "Complaint").  At that time, the NSAIDs aspirin, ibuprofen, and diclofenac were

commonly used to treat arthritis.  (Id.).  However, medical studies associated long-term use of those medications with a variety of gastrointestinal problems  (Id.).

According to Plaintiffs, Pharmacia distinguished Celebrex from other NSAIDs by marketing the medication as an effective arthritis treatment that did not produce adverse gastrointestinal side effects, thus allowing Pharmacia to charge exponentially more for Celebrex than was charged for aspirin or ibuprofen and to reap considerable profits from Celebrex sales.  (Id. at ¶ 3).  The absence of side effects associated with Celebrex, Plaintiffs argue, had never been clinically proven.  (Id.).  Regardless of whether Pharmacia made such a claim, however, the Food and Drug Administration (hereinafter "FDA") required that Celebrex display on its packaging a warning of possible risks of gastrointestinal problems–the same warning required of ibuprofen– throughout the Class Period.  (Id. at ¶¶ 3, 13).

Between September 1998 and March 2000, Defendants commissioned the "Celecoxib Long-Term Arthritis Safety Study" (hereinafter "the CLASS study" or "CLASS"), a clinical study to compare the gastrointestinal problems of patients who used Celebrex to those of patients who used the NSAIDs ibuprofen and diclofenac.  (Letter Brief In Support of Plaintiffs' Motion For Leave to Take Additional Depositions at 3)(hereinafter "Plaintiffs' Brief").  The instant case stems directly from the CLASS study, as Plaintiffs allege that Pharmacia made materially false and misleading statements regarding the results of this study, and that these statements led to the artificial inflation of Pharmacia's stock price.  (Id. at 3).

Specifically, Plaintiffs claim that data analyzed according to the protocol established before the study began showed that Celebrex offered no benefits over the other NSAIDs in terms of prevention of gastrointestinal side effects.  (Complaint at ¶ 5).  To disguise these unfavorable and unexpected results, Plaintiffs argue, Pharmacia reported the results of only a limited portion of the

study, changed the criteria by which Celebrex was compared to the other drugs, and changed the method of comparison.  (Id. at ¶ 6).  Based on this manipulated data, Plaintiffs conclude, Pharmacia declared that the CLASS study found Celebrex to be superior to other NSAIDs.  (Id.).

Defendants counter that all statements made in reference to the CLASS study by Defendants were accurate, and that all relevant information pertaining to the study was both disclosed by the Defendants and well known in the marketplace.  (Brief In Further Support of Defendants' Motion to Dismiss at 2-3)(hereinafter "Defendants' Reply Brief").  Specifically, Defendants claim that Pharmacia disclosed that the results of the study were based on a limited window of the study rather than the entire period, that the interpretation of the data was based on a modified protocol, and that the Celebrex results were not superior to the results of the other individual NSAIDs.  (Id. at 3).  Moreover, both sides concede, Pharmacia did subsequently submit the entire set of CLASS data to the FDA.  (Plaintiffs' Brief at 4).  As such, and because Defendants did not endorse or sufficiently entangle themselves in any resulting financial analyst reports, Defendants argue, any reports that led to an increase in the value of Pharmacia stock are not attributable to Defendants.  (Defendants' Reply Brief at 20).

Following the CLASS study and the publication of an article in The Journal of the American Medical Association casting the study's results in a manner favorable to Celebrex, several articles criticized Pharmacia's reporting of the CLASS results.  (Plaintiffs' Brief at 3-5).  While Plaintiffs and Defendants disagree as to whether these latter articles were representative of the medical and scientific communities' opinions of Pharmacia's conduct, Pharmacia's stock price decreased significantly following the criticism.  (Complaint at ¶¶ 38, 71).  Following this sharp decrease, Plaintiffs brought suit, alleging that all purchasers of Pharmacia securities during the Class

Period suffered monetary injury through their respective purchases of the securities at artificially inflated prices. (Id. at ¶¶ 1, 71).

As all parties are familiar with the extensive procedural history of this case, the Court need not give a detailed summary of that history for the purpose of this Opinion. Plaintiffs moved for leave to take 80 fact depositions and filed a letter brief in support of that motion on July 7, 2006. Defendants submitted a letter in opposition to Plaintiff's motion on July 18, 2006, to which Plaintiffs replied on July 31, 2006.

III. DISCUSSION

   A. Legal Standard

The Federal Rules of Civil Procedure state that "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if...a proposed deposition would result in more than ten depositions being taken..." FED. R. CIV. P. 30(a)(2)(A). Rule 26(b)(2) states:

> [T]he frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit...

In other words, a party seeking more than ten depositions must overcome this presumptive limit by demonstrating that the additional depositions are reasonable and necessary. See FED. R. CIV. P. 26(b) Notes of Advisory Committee on 1993 Amendments ("Amendments to Rule[] 30 place presumptive limits on the number of depositions and interrogatories, subject to leave of court to pursue additional discovery."); Archer Daniels Midland Co. v. Aon Risk Servs., 187 F.R.D. 578,

586 (D. Minn. 1999)("In practical terms, a party seeking leave to take more depositions...than are contemplated by the Federal Rules or by the Court's Scheduling Order must make a particularized showing of why the discovery is necessary.").

Neither the Third Circuit, the District of New Jersey, nor the other federal circuits have addressed at length the standard promulgated in Federal Rules 30(a)(2)(A) and 26(b)(2) for leave to take additional depositions.  However, the district courts that have considered the issue have regularly held that a party must, at the very least, commence discovery before making such a motion. See Whittingham v. Amherst College, 163 F.R.D. 170, 171 (D. Mass. 1995)(stating that "since a court must determine the cumulative effect of the proposed discovery, as well as the opportunity for the party to obtain the information through other means, [Rule 26] also appears to assume that discovery has at least commenced"); Bituminous Fire and Marine Insurance Corp. v. Dawson Land Development Co., 2003 WL 22012201 at *1 (M.D. Fla. Feb. 13, 2003)(stating that "[a]t best, [the defendant's] motion [for additional depositions] has been brought prematurely as nothing in the record indicates discovery has begun").  In fact, most district courts have gone a step further in requiring that a party exhaust its available depositions before seeking leave for additional depositions. See Archer Daniels Midland Co., 187 F.R.D. at 587 (holding that "[a]t a minimum, [the defendant] should appropriately exhaust its current quota of depositions, in order to make an informed request for an opportunity to depose more witnesses, before seeking leave to depose a legion of others"); General Electric Co. v. Indemnity Insurance Co. of North America, 2006 WL 1525970 at *2(D. Conn. May 25, 2006)(observing that "courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right"); Scanlon v. Potter, 2006 U.S. Dist. LEXIS 29181 (D. Vt. 2006)(ruling that the court

would not grant leave "[w]ithout more information about the need for additional depositions, and without a showing that alternative means of discovery have been exhausted").

Additionally, a party seeking leave to take additional depositions generally must identify with specificity each person to be deposed.  See Indemnity Insurance Co. of North America, 2006 WL 1525970 at *2.  The District Court of Massachusetts has explained that, "[b]y speaking in terms of 'the person to be examined' and 'a proposed deposition,'[Federal Rule 30(a)(2)(A)] clearly contemplates that a party has in mind a specific individual whom he or she intends to depose." Whittingham, 163 F.R.D. at 171.  Likewise, the determinations required by Federal Rule 26(b)(2)–whether the requested additional depositions are cumulative or duplicative, involve information previously obtainable through permitted discovery, or impose a burden that outweighs the likely benefit–require a court's knowledge of the identities of those to be deposed.  Id.

Finally, a party generally must make a "particularized" showing of need for additional depositions to satisfy the standard of Federal Rule 26(b)(2).  Archer Daniels Midland Co., 187 F.R.D. at 586; In re Air Crash at Taipei, 2003 U.S. Dist. LEXIS 23220 at *7 (C.D. Cal. 2003); see also Bell v. Fowler, 99 F.3d 262, 271 (8th Cir. 1996)(finding no abuse of discretion by district court that denied plaintiff's motion for leave when plaintiff "presented no good reason why the additional depositions were necessary").  To meet this requirement of a particularized showing of need, the moving party must go beyond general assertions regarding the potential relevance of the proposed deponents' testimony to demonstrate that the probable testimony of each proposed deponent is essential to the moving party's case.  Archer Daniels Midland Co., 187 F.R.D. at 587.  Like the previously described requirements for leave to take additional depositions, the "particularized" showing of need requirement necessarily flows from Rule 26(b)(2), as such information is clearly

6

essential to the determinations required by the Rule.  These requirements "enable the court to keep tighter rein on the extent of discovery," and thus reflect one of the express objectives underlying Rule 26(b)(2).  FED. R. CIV. P. 26(b) Notes of Advisory Committee on 1993 Amendments.

   B.  Exhaustion of Available Depositions

   Plaintiffs in the current case have yet to depose a single witness.  (Letter Brief in Opposition of Plaintiffs' Motion For Leave to Take Additional Depositions at 2). As such, even if this Court were to adopt the more lenient standard that a party must merely commence taking depositions before filing for leave to take additional depositions, Plaintiffs would fail to meet this standard.  That said, this Court finds the reasoning of those district courts requiring a party to fully exhaust its allotted depositions before seeking leave to take additional depositions more applicable to the instant case.  Admittedly, Plaintiffs' case is complex and may require depositions beyond the ten allowed for in the Federal Rules.  However, rather than temper the need for judicial scrutiny of expansive discovery, the complexity of the case underscores the Court's role in ensuring that the massive volume of potentially relevant information does not become an obstacle to efficient resolution of the matter.  The Court best satisfies this role by evaluating any motion for leave to take additional depositions against the backdrop of information already obtained in permitted depositions.

   Plaintiffs argue, and the Court recognizes, that district courts have granted leave for plaintiffs to take as many as 80 depositions in the past.  See In re AT&T Corporation Securities Litigation, No. 00-5364, slip op. (D.N.J. Apr. 23, 2003)(granting plaintiffs leave to take 80 fact depositions); New England Health Care Employees Pension Fund v. Fruit of the Loom, No. 1:98CV-99-M, slip op. at 3 (W.D. Ky. Dec. 10, 2001)(allowing plaintiffs 75 depositions); In re Cisco Systems., Inc. Securities Litigation, No. C01-20418-JW, slip op. (N.D. Cal. Oct. 25

2004)(allowing plaintiffs 28 depositions).  However, the orders allowing leave for additional

depositions to which Plaintiffs cite contain no discussion of the analyses the courts employed to

reach their respective decisions.  Hence, this Court is unable to apply those decisions to the

current case, as it is unclear whether the circumstances leading to those orders were at all similar

to the current case, or even if the defendants in those cases opposed the plaintiffs' efforts to take

additional depositions.  The opinions that do offer an analysis of a plaintiff's motion for leave to

take additional depositions, those previously cited in this Opinion, are uniform in requiring at

least some commencement of the allotted depositions before such a motion is granted.  As such,

Plaintiffs shall be required to conduct the ten depositions that they are currently permitted before

this Court will entertain a motion for leave to take additional depositions.

      C.  Identification of Additional Persons to be Deposed

_____In anticipation of a subsequent motion by Plaintiffs to grant  leave to take additional fact

depositions following Plaintiffs' completion of their permitted depositions, the Court will briefly

comment on Plaintiffs' submission of possible deponents in support of the current motion.

      Plaintiffs have submitted a list of 80 "possible" deponents that they assert "describes each

witness'[s] position and the relevance of his or her likely testimony based on documents

plaintiffs' counsel has reviewed."  (Plaintiffs' Brief at 6).  In Plaintiffs' Brief, they state that they

do not necessarily plan to depose each person on the list, but that the discovery process will

reveal whether each of the listed individuals' testimony is required and, additionally, whether

individuals not included on the list need to be deposed.  The District of Massachusetts, in

Whittingham, found a motion for leave to take additional depositions to be insufficiently specific

due to its listing of "a large number of individuals who could potentially be deposed." 163

F.R.D. at 171. This Court concurs with that finding–that a broad list of potential deponents does

not provide a court with the information necessary to make a 26(b)(2) determination–and

observes that Plaintiffs' list in the current case is even less specific than that in Whittingham, as

Plaintiffs wish to leave the door open for additional individuals to be added. For the Court to

grant a motion for leave to take additional depositions, the moving party must provide a concrete

list of the individuals to be deposed; the Court will not grant a party free rein to add deponents at

that party's discretion.

      D. Particularized Showing of Need for Additional Depositions

      Plaintiffs argue that the additional depositions are necessary primarily due to the

complexity of the case and, more specifically, because each of the individuals included on the list

"saw and heard different events relevant to plaintiffs' claims." (Plaintiffs' Brief at 1). In

addition, Plaintiffs restate the facts of the case, including in that description the points at which

the proposed deponents would have been exposed to or participated in events that would render

the deponents' testimony relevant. (Id. at 2-6). Finally, in the list of proposed deponents,

Plaintiffs describe the relevant information each individual possesses or will testify to upon

deposition. (Id. Exhibit A). Clearly, Plaintiffs have gone beyond general assertions regarding the

potential relevance of the proposed deponents' testimony.

      However, while the description of the likely testimony qualifies as adequately

"particularized," Plaintiffs must be mindful that the particular information sought in additional

depositions must also be necessary to their case, and thus not cumulative or duplicative of other

testimony.  Even a cursory evaluation of Plaintiffs' list of proposed deponents reveals areas of significant overlap as to the deponents' expected testimony.  For instance, Plaintiffs wish to depose all of the authors of the CLASS study, at least six of whom are expected to testify regarding the design of the study, the results, the alleged manipulation of the data, and the alleged resulting misrepresentation of that data.  (Id.).  Likewise, Plaintiffs count as proposed deponents, at a minimum, seven current or former employees or associates of the FDA expected to testify regarding Defendants' label negotiations with the FDA .  (Id.).  Because Plaintiffs have failed to exhaust their available depositions, the Court does not address the argument on each individual proposed deponent, nor does the Court mean to conclusively imply that a proposed deponent's mere inclusion in one of the categories discussed above will necessarily render that deponent's testimony cumulative or duplicative upon more extensive review.  Rather, due to the likelihood of a future motion for leave to take additional depositions, the Court simply reminds the parties that the likely testimony of the proposed additional deponents must be necessary to the moving party's case, in accordance with Federal Rule 26(b)(2).

## IV.  CONCLUSION

Plaintiffs' failure to exhaust their available depositions before moving for leave to take additional depositions precludes in this instance an informed determination of whether their proposed additional depositions would satisfy the standard promulgated in Federal Rules 30(a)(2)(A) and 26(b)(2).  Should Plaintiffs wish to move for leave to take additional fact depositions after completing their allotted depositions, the Court will entertain the motion at that

time according to the standard discussed in this Opinion.  Additionally, the Court reminds the

parties of their duty to meet and confer in an effort to resolve this issue.

For the aforementioned reasons, IT IS on this 18th day of August 2006,

ORDERED that Plaintiffs' Motion for Leave to take 80 additional fact depositions is

DENIED.


    s/ Tonianne J. Bongiovanni

**TONIANNE J. BONGIOVANNI**

**UNITED STATES MAGISTRATE JUDGE**