NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
ALASKA ELECTRICAL PENSION :
FUND, et al., On Behalf of Themselves :
and All Others Similarly Situated, :
:
        Plaintiffs, :    Civil No. 03-1519 (AET)
:
    v. :    **MEMORANDUM OPINION**
:
PHARMACIA CORPORATION, et al., :
:
        Defendants. :
_____:

THOMPSON, U.S.D.J.

This matter comes before the Court upon Plaintiffs' Motion for Class Certification pursuant to Fed. R. Civ. P. 23, Plaintiffs' Motion to Seal Materials, and Defendants' Cross-Motion to Strike New Materials Submitted by Plaintiffs in Their Reply ("Cross-Motion to Strike"). The Court has decided these motions after reviewing the submissions of the parties and hearing oral argument on January 12, 2007. For the reasons stated on the record and discussed in this Memorandum Opinion, and for good cause shown, Plaintiffs' Motion for Class Certification is granted except with respect to the end of the class period, Plaintiffs' Motion to Seal Materials is denied, and Defendants' Cross-Motion to Strike is denied.[1]

BACKGROUND

This litigation arises from the Defendants' efforts to change the labeling of Celebrex in

---

[1] Plaintiffs' Motion to Seal Materials and Defendants' Cross-Motion to Strike were denied in court on January 12, 2007; this ruling is memorialized in the accompanying Order.

order to promote Celebrex's perceived gastrointestinal ("GI") advantages.  Toward that end, Defendants commissioned the Celecoxib Long Term Arthritis Safety Study ("CLASS").[2]  Plaintiffs allege that, in the course of interpreting CLASS data, promoting the perceived GI advantages of Celebrex allegedly demonstrated by CLASS, and defending the results of CLASS from outside critics, Defendants made false and misleading statements in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10(b)(5), 17 C.F.R. § 240.10-b(5).  Plaintiffs claim that the allegedly false and misleading statements artificially inflated the price of Defendant Pharmacia Corporation's common stock, thereby injuring Plaintiffs and the proposed class of investors.[3]  Plaintiffs move this Court to certify a class of common stock holders, lead and liaison counsel, and a proposed class period starting on April 17, 2000 and ending on May 31, 2002.

Plaintiffs also ask this Court to unseal certain documents ("Documents"), disclosed by Defendants during discovery and discussed by Plaintiffs in their Reply Brief.  The Documents were sealed pursuant to a protective order entered on June 26, 2004.  Defendants argued that the Documents involved protected self critical analysis, and cross-moved to strike portions of the Plaintiffs' Reply Brief in which Defendants allege that Plaintiffs introduced new arguments and materials.  Defendants further argue that the portions should be stricken because they improperly

---

[2]   CLASS compared Celebrex to two commonly used NSAIDs, ibuprofen and diclofenac in a study group of approximately eight thousand patients, four thousand receiving Celebrex and two thousand each receiving ibuprofen and diclofenac respectively.  CLASS tracked the incidence of GI problems in each group to determine if Celebrex resulted in less GI distress than the comparators.  While Defendants reported results after six months, CLASS lasted up to fifteen months versus ibuprofen and twelve months versus diclofenac.

[3]   Defendants argued that holders of Pharmacia bonds and preferred stock cannot be certified as part of the proposed class.  Plaintiffs conceded this point.

rely on the protected Documents.

DISCUSSION

In order for a class to be certified, a plaintiff must satisfy the prerequisites of Fed. R. Civ. P. 23(a), and must also demonstrate that the action qualifies as a class action under at least one of the three subdivisions of Fed. R. Civ. P. 23(b). Barnes v. Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998). The Court does not conduct a preliminary investigation of the merits, but curtails its determination to the requirements of Fed. R. Civ. P. 23. Id. Although the Court should "rigorously analyze" the allegations of the complaint relating to the maintainability of the action as a class action, Osgood v. Harrah's Entm't, Inc., 202 F.R.D. 115, 120 (D.N.J. 2001), it need not "resolve disputed issues" at this stage of the case. In Re Honeywell Int'l Inc., Sec. Litig., 211 F.R.D. 255, 264 (D.N.J. 2002) ("Honeywell").

A.   Qualification under Fed. R. Civ. P. 23

Defendants make a two-pronged attack on the Plaintiffs' proposed class. First, Defendants argue that Plaintiffs fail to show that issues common to the class predominate, as required by Fed. Civ. R. 23(b). Specifically, Defendants argue that the Plaintiffs may not rely on the "fraud on the market" theory because the alleged misrepresentations were not "material." Second, Defendants attack the qualifications of the proposed representative Plaintiffs, ("Representatives"). Specifically, they argue that the Representatives do not satisfy the requirements of Fed. R. Civ. P 23(a)(3) (the "typicality requirement") or 23(a)(4) (the "adequacy requirement").

   1.   Rule 23(b)

Defendants argue that Plaintiffs failed to demonstrate that common issues predominate as

required by Fed. R. Civ. P. 23(b).  Under the "fraud on the market" theory, Plaintiffs are entitled to a rebuttable presumption of reliance if they can prove that (1) Defendant made public misrepresentations; (2) the misrepresentations were material; (3) the shares were traded on an efficient market; and (4) Plaintiffs purchased shares after the misrepresentations but before the truth was revealed.  Basic, Inc. v. Levinson, 485 U.S. 224, 248 n.27 (1988).  Defendants argue the statements that Plaintiffs allege were fraudulent are not material or misleading, therefore Plaintiffs are not entitled to a presumption of reliance.

Given the weight attached to CLASS results by Defendants and various stock analysts, and the fact that CLASS was widely reported in the financial and mainstream media, the Court finds the statements cited by Plaintiffs, including Defendants' April 17 press release ("April 17 Release") to be material.  Oran v. Stafford, 226 F.3d , 275, 282 (3d Cir. 2000) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997) ("Burlington") (information is material if a reasonable investor would find it important when making an investment decision)).[4]

Defendants contend that the April 17 Release cannot be material because, in an efficient market, materiality is measured by movements in stock price, and there was no appreciable uptick in Pharmacia stock on April 17th.  While the parties agree that Pharmacia's stock price did not move appreciably on April 17th (see, e.g., Hakala Decl. at 5), sole reliance on stock price

---

[4] Defendants argue that the release of the CLASS results on April 15, 2000 and the April 17 press release were not misleading because the full results of the study, including the fact that CLASS missed its primary endpoints, were disclosed.  While the Court finds the April 17 Release to be material, inquiry into whether the April 17 Release was "misleading" goes to the elements of Plaintiff's case, and resolution of this disputed issue at this stage of the litigation would be a disfavored "deep incursion" into the merits.  Honeywell, 211 F.R.D. at 264.

movement ignores the possibility that other factors influenced the stock's price.  See, e.g., Steiner v. Medquist, Inc., 04-5487, 2006 WL 2827740, at *9 n.13 (D.N.J. Sept. 19, 2006) (citing Dura Pharm. Inc. v. Broudo, 544 U.S. 336, 343 (2005)).  Further, it remains an open question whether raw price inflation is required for a statement to be deemed material.  See Honeywell, 211 F.R.D. at 262 n.10 (stating that price inflation not required for presumption of reliance); In re Lucent Technologies, Inc. Sec. Litig., 217 F. Supp. 2d 529, 543-44 (D.N.J. 2002) (stock price movement is an "alternative standard" for measuring materiality).  Finally, the disputed issue of whether the stock price was, or was not, affected by the April 17 Release goes to elements of Plaintiff's case and demonstrates the existence of a genuine issue of material fact, thus it would be inappropriate to make findings at this stage of the litigation.  Honeywell, 211 F.R.D. at 264; In Re Loewen Group Sec. Litig., 395 F. Supp. 2d 211, 217 (E.D. Pa. 2005).

    2.    Rule 23(a)

Defendants argue that the Representatives do not satisfy the requirements of Fed. R. Civ. P. 23(a)(3) (the "typicality" requirement) because they did not rely on the alleged misrepresentations, thus they are subject to a unique defense that would threaten to be the focus of the litigation.  The Court has found, for purposes of this Motion, that the alleged misrepresentations are material, therefore reliance is presumed.  In re Data Access Sec. Litig., 103 F.R.D. 130, 138 (D.N.J. 1984) ("Data Access") (reliance on market is reliance on representations); see also Burlington, 114 F.3d at 1419 n.8 (stating that plaintiffs need not show reliance under the fraud on the market theory). Although the Defendants offer evidence of non-reliance by the Representatives, the reliance issue would still predominate, and individual questions of reliance should not be addressed in this proceeding.  Data Access, 103 F.R.D. at

139-40. Consequently, the class may be certified even though some Plaintiffs may be subject to a unique defense later. Id.

Defendants also challenge the adequacy of representation prong under Fed. R. Civ. P. 23(a)(4). Specifically, they allege that the Representatives are without knowledge of this case and have lent their names to a suit controlled by the class's lead attorney, therefore they are unsuitable as class representatives. The level of knowledge of the class representative is not a relevant inquiry in this Circuit. See Lewis v. Curtis, 671 F.2d 779, 789 (3d Cir. 1982); Epstein v. Moore, No. 87-2984, 1988 WL 62213, at * 4 (D.N.J. June 13, 1988); Data Access, 103 F.R.D. at 140-41. When a court considers adequacy, there are two distinct issues to consider: (1) the qualifications of the counsel to represent the class, and (2) conflicts of interest between the named parties and the class they seek to represent. Barnes, 161 F.3d. at 141. The first issue, adequacy of counsel, is not contested. As for the second issue, Defendants do not argue that there is a conflict of interest between the Representatives and the proposed class (although the same issue was discussed above in connection with the reliance defense and the alleged lack of typicality). The Court finds that Plaintiffs satisfy Fed. R. Civ. P. 23(a)(4).

B.     Length of the Class Period

Plaintiffs propose a class period of April 17, 2000 to May 31, 2002. Defendants argue that the class period should begin no earlier than September 13, 2000, and end no later than February 6, 2001. As discussed above, the Court finds the April 17 Release to be material. Oran, 226 F.3d at 282. Consequently, the class period will start on April 17, 2000.[5]

---

[5]     As noted, Defendants challenged the materiality and reasonableness of Plaintiffs' reliance. Although the Court has found the April 17 Release to be facially material, and doubts regarding factors such as reliance should be resolved in favor of expanding the class period, a

With respect to the ending date, the class period should not extend past the date upon which curative information becomes available. In re Exxon Mobil Corp. Sec. Litig., 387 F. Supp. 2d 407, 417 (D.N.J. 2005). Curative information retracts or dispels the alleged misinformation, or puts the investor on inquiry notice of the alleged fraud, making further reliance on the original statements by investors unreasonable. In re ORFA Sec. Litig., 654 F. Supp. 1449, 1465 (D.N.J. 1987) ("ORFA"); Data Access, 103 F.R.D. at 144. The Court finds that the FDA's data release and the advisory committee ruling ("FDA Release") constituted a curative disclosure as they were substantial, widely-reported, and contradicted the Defendants' conclusions about the results of CLASS. See, e.g., Data Access, 103 F.R.D. at 144; see also In re LTV Sec. Litig., 88 F.R.D. 134, 147-48 (N.D. Tex. 1980). Further, it is uncontested that this regulatory action caused a precipitous drop in Pharmacia's common stock price, which is evidence of its curative effect. See Seremenko v. Cendant Corp., 223 F.3d 165, 181 (3d Cir. 2000) (finding price drop supportive of curative effect finding); ORFA, 654 F. Supp. at 1464 (same); accord In re Zenith Laboratories Sec. Litig., No. 86-3241, 1993 WL 260683, at *14-15 (D.N.J. Feb. 11, 1993).[6]

While Defendants' post-FDA Release statements in defense of CLASS could have influenced investors, the Court finds that they did not outweigh the significance and effect of the

---

class period may be changed by the Court later if the facts warrant it. Data Access, 103 F.R.D. at 143.

[6] This conclusion is supported by Plaintiffs' expert, who characterized the stock price drop from February 6th to the 8th as "extremely significant" (Hakala Decl. at 6, 22) and stated that "[t]hese disclosures led to doubts regarding Pharmacia's GI safety claims for Celebrex and resulted in a substantial reassessment of Pharmacia's prospects." (Id. at 22.)

FDA Release and investor reaction to it.[7]  See Lerch, 144 F.R.D. at 253.  Consequently, investors who purchased Pharmacia common stock on or after February 7, 2001 stood in a different posture than those who purchased on or prior to February 6th, in that they could no longer reasonably rely on Defendants' positive statements regarding CLASS.  See ORFA, 654 F. Supp. at 1465.

## CONCLUSION

For the reasons stated on the record and discussed above, Plaintiffs' Motion for Class Certification is GRANTED, EXCEPT that the class will consist of holders of record of Pharmacia Common Stock that purchased said stock on or between April 17, 2000 and February 6, 2001.  An appropriate Order accompanies this Opinion.

        /s/ Anne E. Thompson
   ANNE E. THOMPSON, U.S.D.J.

DATE: January 22, 2007

---

[7] Plaintiffs argue that neither the FDA Release, nor any article prior to the June 1, 2002 editorial in the *British Medical Journal*, alleged that Defendants committed fraud.  While this may arguably be true, curative information need not demonstrate fraud, it need only cause a reasonable investor to doubt the prior statements.  ORFA, 654 F. Supp. at 1465.  In the alternative, Plaintiffs argue that Defendants perpetuated the effect of their earlier misrepresentations by defending CLASS against its critics.  Plaintiffs rely on In re Resource Am. Sec. Litig., where the court found that a stock analyst's report calling the defendant's accounting into question was curative, but aggressive disputation by defendant continued the effect of the original misrepresentation.  202 F.R.D. 177, 185 (E.D. Pa. 2001).  The Court finds, however, that Lerch v. Citizens First Bancorp, Inc., 144 F.R.D. 247 (D.N.J. 1992) is closer to the mark.  In Lerch, this Court found that defensive comments by the defendants did not affect the curative disclosure because the disclosure came in a "barrage of news reports sufficient to outweigh defendants' assurances as a matter of law."  Lerch, 144 F.R.D. at 253.