UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>PHARMACIA CORP., et al.,<br><br>Defendants. | 03-CV-1519 (AET)<br>(Consolidated)<br><br>**ORAL ARGUMENT REQUESTED**<br><br>DOCUMENT FILED ELECTRONICALLY |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE DECLARATION OF TIMOTHY C. WANG M.D.

NORRIS, McLAUGHLIN & MARCUS, P.A.
P.O. Box 1018
721 Route 202-206
Somerville, New Jersey 08876
(908) 722-0700

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
(212) 504-6000

Attorneys for Defendants Pharmacia Corp., Fred Hassan, G. Steven Geis, Carrie Cox and Pfizer Inc.

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ........................................................................................................... 3

        A.     The Wang Declaration Is Admissible Expert Testimony Under Rule 702 And The *Daubert/Paoli II* Standard ................ 3

        B.     Dr. Wang Is Qualified To Offer An Expert Opinion Regarding When The Facts Identified In The Complaint Were Publicly Disclosed ............................................................ 4

        C.     The Wang Declaration Satisfies The Reliability Requirement Under Rule 702 ...................................................... 6

        D.     The Wang Declaration Is A Proper "Fit" For The Issues Presented And Is Helpful To The Trier of Fact ........................ 10

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*Brown v. Southeastern Pa. Transp. Auth.* (*In re Paoli R.R. Yard PCB Litig.*),
   35 F.3d 717 (3d Cir. 1994) .................................................................. 3-4, 5, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .................................................................................. 7-8

*Engers, McFall, Noerr & Smit v. AT & T*,
   No. Civ. 98-CV-3660 JJL, 2005 WL 2338862 (D.N.J. Aug. 10, 2005) ............. 11

*Hammond v. International Harvester Co.*,
   691 F.2d 646 (3d Cir. 1982) ......................................................................... 4

*Holbrook v. Lykes Bros. S.S. Co.*,
   80 F.3d 777 (3d Cir. 1996) ........................................................................... 9

*Knight v. Otis Elevator Co.*,
   596 F.2d 84 (3d Cir. 1979) ........................................................................ 4-5

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ........................................................................... 7, 8, 10

*Lindsey v. Caterpillar, Inc.*,
   No. Civ. 03-5762 GEB, 2007 WL 1816105 (D.N.J. June 22, 2007) ......... 8, 9, 10

*Magistrini v. One Hour Martinizing Dry Cleaning*,
   180 F. Supp. 2d 584 (D.N.J. 2002), *aff'd*,
   68 Fed. Appx. 356 (3d Cir. 2003) ........................................................... 10-11

*Stephan v. Continental Cas. Ins. Co.*,
   No. Civ. A. 01-1555, 2003 WL 21032042 (D.N.J. May 6, 2003) ................. 9, 10

*Thomas & Betts Corp. v. Richards Mfg. Co.*,
   No. Civ. 01-4677, 2006 WL 902148 (D.N.J. Apr. 4, 2006) ........................ 10-11

*United States v. Davis*,
   397 F.3d 173 (3d Cir. 2005) ...................................................................... 8-9

**PAGE(S)**

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*,
   299 F. Supp. 2d 400 (D.N.J. 2003) .................................................................... 3-4

## STATUTES & OTHER AUTHORITIES:

Fed. R. Evid. 702 ............................................................................................... 2, 3

Defendants Pharmacia Corporation ("Pharmacia," or, the "Company"), Pfizer, Inc. ("Pfizer"), Fred Hassan, Dr. G. Steven Geis, and Carrie Cox (collectively, the "Defendants") submit this memorandum of law in opposition to the Plaintiffs' Motion to Strike the Declaration of Timothy C. Wang, M.D. Filed in Support of Defendants' Motion for Summary Judgment ("Pls. Br.").

## PRELIMINARY STATEMENT

This action arises out of claims that Defendants violated Section 10(b) and 20 of the Securities Exchange Act of 1934 by making false statements regarding the results of the Celecoxib Long Term Safety Study ("CLASS") in a September 2000 article published in the Journal of the American Medical Association ("JAMA").

On May 31, 2007, Defendants filed a motion for summary judgment on the ground that Plaintiffs failed to bring their claims within the applicable statute of limitations on the basis that "curative information" put them on inquiry notice of their claims more than two years prior to the date on which they filed their Complaint. In support of that motion, Defendants submitted the Declaration of Dr. Timothy C. Wang, M.D., who opined on the nature and extent of the curative information that Defendants contend, and that this Court has already determined, put Plaintiffs on inquiry notice of their claims on February 6, 2001. Plaintiffs now move to strike Dr. Wang's Declaration on the grounds that it is not

admissible under Federal Rule of Evidence 702 and the Supreme Court's *Daubert* standard. Plaintiffs' entire motion is based on a blatant mischaracterization of the opinions offered by Dr. Wang in his declaration. According to Plaintiffs' motion, Dr. Wang opines "as to when Plaintiffs . . . should have 'sufficient facts' available to them to have timely filed their claims." Pls. Br. at 1. Dr. Wang, however, offers no such opinion. Rather, Dr. Wang opines that "the [information] that [was] posted on the FDA website, as well as the public statements made during the FDA AAC hearing, publicly disclosed each of the alleged misrepresentations regarding the results of CLASS identified by Plaintiffs." Wang Decl. ¶ 44. Whether these public disclosures identified by Dr. Wang were sufficient to put Plaintiffs on inquiry notice -- the ultimate issue in Defendants' Motion for Summary Judgment -- is to be determined by the Court, and Dr. Wang nowhere offers an opinion in that regard.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, expert testimony is admissible if the expert is qualified to offer an opinion, if the opinion is "reliable," and if it is relevant in the case. Fed. R. Evid. 702. When properly characterized, the opinions offered by Dr. Wang easily satisfy all these criteria and Plaintiffs' motion should be denied.

## **ARGUMENT**

A. **The Wang Declaration Is Admissible Expert Testimony Under Rule 702 And The *Daubert/Paoli II* Standard**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 299 F. Supp. 2d 400, 404 (D.N.J. 2003). Rule 702 states that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Third Circuit stated in *Brown v. Southeastern Pennsylvania Transportation Authority (In re Paoli Railroad Yard PCB Litigation)*, 35 F.3d 717 (3d Cir. 1994) ("*Paoli II*"), in short "the three requirements for the admissibility of expert testimony under Rule 702 [are]: qualification, reliability and fit." *Wartsila*, 299 F. Supp. 2d at 404. In other words, under *Paoli II*:

> First, the proffered witness must be a qualified expert. This requirement has been interpreted liberally, encompassing a broad range of knowledge, skill and training that may qualify an expert as such. Second, the testimony must be reliable. That is, it must be based on

> methods and procedures of science rather than on speculative belief or unsupported speculation, *i.e.*, an expert must have "good grounds" for his or her belief. Third, the expert's testimony must "fit" the facts of the case; it must be relevant and assist the trier of fact in its determination of an issue in dispute.

*Id.* (*citing Paoli II*, 35 F.3d at 741-42). An application of the three-prong inquiry mandated by Rule 702 compels the conclusion that Dr. Wang's testimony is admissible.

### B. Dr. Wang Is Qualified To Offer An Expert Opinion Regarding When The Facts Identified In The Complaint Were Publicly Disclosed

The first requirement under Rule 702 is "that a witness proffered to testify to specialized knowledge must be an expert." *Paoli II*, 35 F.3d at 741. As to this (as well as the other two) requirements for admissibility, "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts" and the court has "eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." *Id.*; *see also Hammond v. International Harvester Co.*, 691 F.2d 646, 652-53 (3d Cir. 1982) (engineer, whose only qualifications were sales experience in the field of automotive and agricultural equipment and teaching high school automobile repair, was qualified to testify in a products liability action involving tractors); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87-88 (3d Cir. 1979) (expert was qualified to testify that unguarded elevator buttons constituted design defect based on his

qualifications in the field of safety and machine guards, and his actual design of certain of such guards, despite expert's lack of specific background in design and manufacturing of elevators). In short, "a broad range of knowledge, skills, and training qualify an expert as such." *Paoli II*, 35 F.3d at 741.

Dr. Wang undoubtedly is qualified to offer an opinion regarding whether or not the information that Defendants allegedly omitted to disclose in the JAMA publication was publicly disclosed on the FDA website on February 6, 2001 or during the February 7, 2001 public hearing held by the FDA Arthritis Advisory Committee. *See* Wang Decl. ¶¶ 1-11. Indeed, Plaintiffs "do not dispute Dr. Wang's medical credentials," or that he "might be able to opine on matters related to gastroenterology" (which is exactly what he is doing in his Declaration) and, accordingly, his expertise to interpret and summarize information about a clinical gastroenterology trial cannot be disputed. Plaintiffs' contention that Dr. Wang is not qualified to offer an expert opinion regarding when Plaintiffs were on inquiry notice of their claims (*see* Pls. Br. at 8-9 ("Dr. Wang not an expert on when something is 'publicly known' or when results of the CLASS Study were 'clearly understood' by a reasonable investor of ordinary intelligence")) is a non-sequitur because Dr. Wang is not offering an opinion on that issue.

Accordingly, the Court should conclude that Dr. Wang is qualified to offer opinions regarding whether and the extent to which the information

concerning CLASS that Defendants allegedly omitted to disclose in the JAMA Article was publicly disclosed on the FDA website on February 6, 2001. The Court should reject Plaintiffs' "red herring" argument that Dr. Wang is not qualified to give an opinion on whether investors were on inquiry notice, an opinion he has not offered.

### C.     The Wang Declaration Satisfies The Reliability Requirement Under Rule 702

The second requirement set forth in Rule 702 requires an expert's testimony to be reliable. Under *Paoli II*, the court "should find an expert opinion reliable . . . if it is based on 'good grounds.'" 35 F.3d at 744.[1] Rule 702's reliability requirement has been clarified by the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and their progeny in the Third Circuit. *Daubert* articulated a non-exclusive and non-exhaustive four-factor test for determining the reliability of scientific testimony. *See* 509 U.S. at 592-94

---

[1] In *Paoli II*, the Third Circuit identified a number of factors that a district court may consider in evaluating the reliability of scientific expert testimony, while observing that not all of these factors may apply in a specific case: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to the methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." 35 F.3d at 742 n.8.

(Four factors of reliability include whether the methodology: (1) can be tested; (2) has been subjected to peer review; (3) has a high known or potential rate of error; and (4) has attained general acceptance within the scientific community). In *Kumho*, the Court concluded that "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141-42 (emphasis omitted). In other words, as the Third Circuit subsequently recognized, "'there are many different kinds of experts, and many different kinds of expertise'" . . . and '*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts in every case.'" *United States v. Davis*, 397 F.3d 173, 178 (3d Cir. 2005) (*quoting Kumho*, 526 U.S. at 141, 150); *see also Lindsey v. Caterpillar, Inc.*, No. Civ. 03-5762 GEB, 2007 WL 1816105, at *3 (D.N.J. June 22, 2007) ("'[T]he test of reliability of expert testimony is [a] "flexible" [one], and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts in every case'") (*quoting Kumho*, 526 U.S. at 141-42).

Courts in the Third Circuit repeatedly have recognized that expert testimony may be reliable without a showing of a scientific methodology. *See Davis*, 397 F.3d at 178 (officer's testimony concerning methods of operation for

drug traffickers was a proper subject matter for expert testimony and was admissible under the Federal Rules of Evidence and *Daubert* because he provided a reliable opinion based on his years of experience); *Lindsey*, 2007 WL 1816105, at *4 (expert testimony on an engineering issue involving whether or not certain protective structures would prevent a type of tractor accident was admissible where expert was familiar with the type of tractor at issue based on his years of experience as a tractor testing engineer, the nature of the question to be resolved, and he did not have to consider outside variables); *Stephan v. Continental Cas. Ins. Co.*, No. Civ. A. 01-1555, 2003 WL 21032042, at **2-3 (D.N.J. May 6, 2003) (engineering expert concerning damage to the piling supporting a home's structure permitted to testify where methodology was "not appropriate for analysis under the *Paoli II* factors, as it is not scientific in nature," and where the court found that the expert's methods of analysis were appropriate "considering the relatively basic analysis he was required to perform"); *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 785 (3d Cir. 1996) (medical experts' testimony was admissible because "[b]oth experts' extensive backgrounds in the study of mesothelioma and its causes, including radiation, their review of the literature, and their review of the [plaintiff's] history provided substance upon which they could offer scientific opinions [regarding whether radiation was a possible cause of mesothelioma] that met the required threshold of reliability").

Here, Dr. Wang identifies the material published on the website and other public information which he reviewed as a basis for his opinion, identifies those pages he deems relevant, and explains why this information supports his opinion. Based on that review and his extensive experience with this very subject matter, he opines that the information, which Plaintiffs alleged to have been omitted from the JAMA publication and other public statements by Defendants, was disclosed on the FDA website on February 6, 2001. Under the "flexible reliability standard" embraced by Rule 702, Dr. Wang's opinion on this issue plainly is reliable.

In response, Plaintiffs contend that the Wang Declaration lacks a sufficiently reliable foundation and therefore must be stricken. Again, Plaintiffs' argument grossly mischaracterizes Dr. Wang's opinion. Contrary to this argument, Dr. Wang is not opining on "when defendants' [alleged] misstatements were 'publicly known;' nor is he relying on "his own speculation." Pls. Br. at 7. Rather, based on the materials published on February 6, 2001, Dr. Wang is opining that the information regarding the CLASS Study that Defendants allegedly omitted to disclose in the JAMA Article and elsewhere was publicly disclosed on the FDA website on February 6, 2001 and during the public hearing held by the FDA Arthritis Advisory Committee on February 7, 2001. He is not opining on whether such disclosure is sufficient to trigger inquiry notice, nor is he opining based on

"speculation" because his declaration expressly discloses the materials he reviewed and their relevance.

Plaintiffs also urge the Court to apply the eight factors identified by the Third Circuit in *Paoli II*. However, as discussed above, the Third Circuit has held that whether the factors specifically enumerated in *Daubert* and *Paoli II* will apply to a specific case "will depend on the nature of the case." *Lindsey*, 2007 WL 1816105, at *3. Trial courts should consider the *Daubert* or *Paoli II* factors only "'where they are reasonable measures of reliability of expert testimony.'" *Thomas & Betts Corp. v. Richards Mfg. Co.*, No. Civ. 01-4677, 2006 WL 902148, at *11 (D.N.J. Apr. 4, 2006) (*quoting Kumho*, 526 U.S. at 152). Moreover, while Plaintiffs contend that Dr. Wang's Declaration lacks a sufficiently reliable foundation based on the application of the eight factors identified in *Paoli II*, they fail even to explain why any (let alone which) of these factors warrant striking Dr. Wang's Declaration. Pls. Br. at 7. Plaintiffs' lack of analysis is telling; there simply is no basis to challenge the reliability of Dr. Wang's opinion -- one based on a review of clearly described materials whose relevance is explained.

### D. The Wang Declaration Is A Proper "Fit" For The Issues Presented And Is Helpful To The Trier of Fact

The final prong of Rule 702 requires that the expert testimony "fit" the facts of the case. *Stephan*, 2003 WL 21032042, at *3. The "fit" requirement provides that testimony "'must in fact assist the jury, by providing it with relevant

information, necessary to a reasoned decision of the case.'" *Id.* (*quoting Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2002), *aff'd*, 68 Fed. Appx. 356 (3d Cir. 2003)). In simple terms, under this prerequisite, testimony must be "relevant for the purposes of the case" and assist the trier of fact. *Engers, McFall, Noerr & Smit v. AT & T*, No. Civ. 98-CV-3660 JJL, 2005 WL 2338862, at *2 (D.N.J. Aug. 10, 2005).

Dr. Wang's testimony clearly is relevant to the ultimate issue on Defendants' Motion for Summary Judgment: when Plaintiffs were on inquiry notice of their claims. To make this ultimate determination, the Court must consider, among other things, the extent to which the information that Plaintiffs allege Defendants omitted from the JAMA Article or that contradicted Defendants' previous statements about the results of CLASS was publicly disclosed on or before February 6, 2001. Dr. Wang reviewed the information posted on the FDA website on February 6, 2001 and the attendant press coverage regarding the February 7, 2001 FDA Arthritis Advisory Committee public meeting and offers the Court his opinion regarding the nature and content of that information.

Plaintiffs contend that the Wang Declaration does not "fit" the issues presented and is not helpful to the trier of fact because his testimony opines "on issues committed exclusively to the jury" such as whether the Plaintiffs were on notice and whether the test for "storm warnings" has been met. Pls. Br. at 3-4.

Plaintiffs are wrong. Dr. Wang is not opining on whether the information posted to the FDA website constituted a "storm warning" nor does he purport to opine as to "whether a reasonable investor of ordinary intelligence would have discovered [the] information and recognized it as a storm warning." Pls. Br. at 5. Instead, he is opining on whether and the extent to which the information posted on the FDA website and other public information addressed, contradicted, or revealed "truths" regarding Defendants' alleged misrepresentations about the results of the CLASS Study.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion to Strike the Declaration of Timothy C. Wang, M.D. Filed in Support of Defendants' Motion for Summary Judgment should be denied.

Dated:   August 21, 2007

Respectfully submitted,

NORRIS, McLAUGHLIN & MARCUS, P.A.

By: _____
Steven A. Karg
William A. Dreier

P.O. Box 1018
721 Route 202-206
Somerville, New Jersey  08876
(908) 722-0700

CADWALADER, WICKERSHAM & TAFT LLP
Jonathan M. Hoff (*pro hac vice*)
Jason M. Halper (*pro hac vice)*
Joshua R. Weiss (*pro hac vice*)
One World Financial Center
New York, New York  10281
(212) 504-6000

Attorneys for Defendants Pharmacia Corp.,
Fred Hassan, G. Steven Geis, Carrie Cox and
Pfizer Inc.