<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, et al., | |
| Plaintiffs, | Civ. No. 03-1519 |
| v. | OPINION |
| PHARMACIA CORPORATION, et al., | |
| Defendants. | |

<u>THOMPSON, U.S.D.J.</u>

This matter has come before the Court on Defendants Carrie Cox ("Cox") and Pfizer,

Inc.'s ("Pfizer") (collectively, "the Defendants") Motion for Judgment on the Pleadings [docket

# 322] brought pursuant to Federal Rule of Civil Procedure 12(c).  Plaintiffs jointly oppose this

motion [329].  After considering the submissions of the parties and without oral arguments, the

Court has reached a decision pursuant to Federal Rule of Civil Procedure 78(b).  For the

following reasons the Defendants' motion is denied.

### I.        BACKGROUND

This class-action dispute arises out of the alleged securities fraud committed by

Defendants when, Plaintiffs' claim, they failed to properly disclose the entire data-set resulting

from a scientific study of the drug Celebrex.  The Court assumes the parties' familiarity with the

underlying facts of this case.

In an Opinion filed on January 30, 2009, the United States Court of Appeals for the Third

Circuit vacated this Court's prior decision granting summary judgment in favor of all

Defendants.  *See Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 (3d Cir.

2009).[1]  In originally granting summary judgment, this Court concluded that Plaintiffs were on

"inquiry notice" as of February 6, 2001.  *See id.* at 346.  The Third Circuit, however, concluded

that "[t]he totality of the evidence in the public realm as of February 2001 did not indicate a

possibility of fraud or even hint at any malfeasance or intentional impropriety . . . ."  *Id.* at 350.

"For inquiry notice to take hold[] there must be some indicia of potential malfeasance."  *Id.* at

351.  In this case, the Third Circuit held that "there was no indication that [Defendants]

deliberately withheld data . . . or improperly massaged the data, until the Washington Post article

in August 2001."  *Id.* at 350.  On this basis, the Court's grant of summary judgment was vacated

and the case was remanded for further proceedings consistent with the appellate court's opinion.

The Defendants have now moved for judgment on the pleadings, again arguing that

Plaintiffs' claims are untimely.  They contend that, based on the Third Circuit's holding that

"inquiry notice" occurred in August 2001, Plaintiffs' claims must have been brought by August

2003.  The Amended Complaint [37], which named Cox and Pfizer as Defendants for the first

time, was filed on October 27, 2003.

Plaintiffs, on the other hand, raise three arguments as to why the Defendants' motion for

judgment on the pleadings should be denied.  First, Plaintiffs argue that Defendants' motion is

barred by "the law of the case" doctrine.  Second, Plaintiffs contend that even if the August 2001

Washington Post article was enough to put Plaintiffs on "inquiry notice" as to certain

Defendants, this does not mean that Plaintiffs "discovered" those "facts constituting the

violation"—including both Cox and Pfizer's "scienter"—as these terms are defined in the

Supreme Court of the United States' recent decision in *Merck & Co. v. Reynolds*, --- U.S. ---,

130 S. Ct. 1784 (2010).  Finally, Plaintiffs posit that their claims against the Defendants should

---

[1] The Court of Appeals for the Third Circuit upheld this Court's denial of Defendant's motion to dismiss, as well as the Court's order granting class certification.  *See id.* at 351–52.  The Third Circuit, however, reversed the Court's order limiting the class period to February 5, 2001 for the same reasons, discussed *infra*, that the Court's grant of summary judgment in favor of the Defendants was vacated.  *See id.*

relate back to the time of the Original Complaint [1], which was filed in April 2003, well within the two-year statute of limitations period.

## II.     LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 12(c); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).  The standard governing a Rule 12(c) motion is the same standard governing motions to dismiss under Rule 12(b)(6).  *Allah v. Hayman*, No. 11-2460, 2011 U.S. App. LEXIS 17860, *8 (3d Cir. Aug. 25, 2011); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  Therefore, a district court should conduct a three-part analysis.  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  But, the court should disregard any conclusory allegations proffered in the complaint.  *Id.*  Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, the court must determine whether, on these facts, a party is entitled to judgment as a matter of law.  *Sikirica*, 416 F.3d at 220.

## III.    LAW OF THE CASE DOCTRINE

The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  In other words, "[t]he law of the case doctrine . . . acts to preclude review of . . . those legal issues that the court in a prior appeal actually decided . . . ." *In re City of*

*Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) (citing *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 429 (3d Cir. 1993)).  This rule extends not only to issues expressly decided by a court in the same case, but it also extends to issues decided by "necessary implication." *Bolden v. SEPTA*, 21 F.3d 29, 31 (3d Cir. 1994) (citing *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782 (2d Cir. 1983)).  There are three limited exceptions to this doctrine that permit a court to reconsider previously decided issues, but these occur only "in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *In re City of Phila. Litig.*, 158 F.3d at 718.

### IV.   ANALYSIS

In deciding the Defendants' pending motion, there are several issues that the Court must address.  First, the Court must determine the scope of Third Circuit's previous holding in this case at *Alaska Elec. Pension Fund*, 554 F.3d 342.  Next, the Court must determine whether the scope of this appellate opinion forecloses either party's arguments.  Finally, because the Court has determined that the Third Circuit opinion does not mandate a particular result in this pending motion, as will be explained *infra*, the Court must determine whether the facts as alleged in Plaintiffs' Amended Complaint and viewed in the light most favorable to the Plaintiffs facially show non-compliance with the statute of limitations.  Each of these issues will be addressed in turn.

### A.  *Scope of the Third Circuit's Holding*

The first issue that the Court must address in deciding Defendant's motion is the scope of the Third Circuit's holding in *Alaska Elec. Pension Fund*, 554 F.3d 342.  Plaintiffs argue that, in its earlier opinion in this case, the Third Circuit expressly ruled that Plaintiffs' claims are not

barred by the statute of limitations.  (*See* Pls.' Opp. Br. at 6).  The Third Circuit's opinion,

however, was considerably narrower.

As the Defendants correctly point out, the Third Circuit held only that the date of

"inquiry notice" in this case occurred on August 5, 2001, the date on which the Washington Post

article was published.  *See Alaska Elec. Pension Fund*, 554 F.3d at 350.  The Third Circuit

concluded that "[f]or inquiry notice to take hold, there must be some indicia of potential

malfeasance.  Because no such indicia existed [at least until August 5, 2001], we will vacate the

District Court's grant of summary judgment."  *Id.* at 351.  The appellate court did not issue a

directive to this Court mandating a holding that the Plaintiffs' claims fall within the applicable

statute of limitations period.  The Third Circuit made its limited, narrow holding clear in a

footnote, in which the court explained: "Here, we merely conclude that, in the absence of any

indication that defendants did not believe the truth of their own statements, investors were not on

inquiry notice of § 10(b) claims."  *Id.* at 351 n.10.  Thus, instead of deciding the larger question

of whether Plaintiffs' claims are barred by the statute of limitations, the Third Circuit reached the

narrower question of determining at what time the Plaintiffs were put on inquiry notice and

"remand[ed] for proceedings consistent with [its] Opinion."  *Id.* at 352.

"On remand, a trial court is free to 'make any order or direction in further progress of the

case, not inconsistent with the decision of the appellate court, *as to any question not settled by

the decision.*'"  *Casey v. Planned Parenthood*, 14 F.3d 848, 854 (3d Cir. 1994) (quoting *Bankers

Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir. 1985)) (emphasis added).  "In the

absence of specific directions, the question as to what further proceedings can be had consistent

with the opinion of the appellate court must be determined from the nature of the case and the

pertinent statutory provisions."  *Bankers Trust Co.*, 761 F.2d at 950 (holding that district court

erred in construing appellate mandate by failing to consider issues on remand that were not

addressed in the previous appellate opinion). The "general rule" to be applied when an appellate court remands for further consistent proceedings is that "the case goes back to the trial court and there stands for a new determination of the issues presented as though they had not been determined before, pursuant to the principles of law enunciated in the appellate opinion." *Id.* (citing *United States v. Iriarte*, 166 F.2d 800, 803 (1st Cir. 1948)). Here, because the ultimate statute of limitations question was not decided on the previous appeal, a ruling on this issue by the Court would not be inconsistent with that appellate decision. The law of the case doctrine, therefore, does not bar the Defendants' motion.

     B.   *"Inquiry Notice" vs. "Discovery" Standard*

The next issue for the Court to address is whether the Third Circuit's determination that Plaintiffs were put on inquiry notice as of August 5, 2001 mandates judgment in favor of the Defendants. As an initial matter, Plaintiffs argue that the Court should not take into consideration matters outside the pleadings and, as to those facts contained in the pleadings, the Court must view them in the light most favorable to the Plaintiffs. (Pls.' Opp. Br. at 4 (citations omitted)). Although this is, generally speaking, a correct recitation of the law, the Court is also permitted to take into consideration when deciding a Rule 12(c) motion "items subject to judicial notice, matters of public record, *orders*, and *items appearing in the record of the case*." *Fisher v. Rite Aid Corp.*, 764 F. Supp. 2d 700, 702 (M.D. Pa. 2011) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations omitted)) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 2012 U.S. App. LEXIS 6216 (3d Cir. Mar. 27, 2012). Therefore, it is proper to consider those findings made by the Third Circuit on appeal. Moreover, the law of the case doctrine requires the Court to accept August 5, 2001 as the date Plaintiffs were put on inquiry notice. This is true regardless of whether the facts contained in the pleadings, viewed in light most favorable to the Plaintiffs, might otherwise lead to a different

conclusion.  However, even accepting that August 5, 2001 is the date that Plaintiffs were put on

inquiry notice, this does not mandate the conclusion that Plaintiffs' claims against Cox and

Pfizer are barred by the statute of limitations.

Subsequent to the Third Circuit's opinion in this case, the United States Supreme Court

issued an opinion in the case *Merck & Co. v. Reynolds*, --- U.S. ---, 130 S. Ct. 1784 (2010).

There, the Court concluded that "the 'discovery' of facts that put a plaintiff on 'inquiry notice'

does not automatically begin the running of the limitations period." *Id.* at 1798.  Rather, "the

limitations period [for a § 10(b) claim] begins to run once the plaintiff did discover or a

reasonably diligent plaintiff would have 'discovered the facts constituting the violation'—

whichever comes first." *Id.* at 1798.  Importantly, the Court explained,

> In determining the time at which "discovery" of those "facts" occurred, terms
> such as "inquiry notice" and "storm warnings" may be useful to the extent that
> they identify a time when the facts would have prompted a reasonably diligent
> plaintiff to begin investigating.  But the limitations period does not begin to run
> until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have
> discovered "the facts constituting the violation," including scienter—irrespective
> of whether the actual plaintiff undertook a reasonably diligent investigation.

*Id.*

Prior to the Supreme Court's decision in *Merck*, the prevailing standard in the Third

Circuit was that the statute of limitations period in securities fraud cases begins to run on the date

of inquiry notice.  *See, e.g.*, *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir.

2006); *see also Alaska Elec. Pension Fund*, 554 F.3d at 351 n.10 ("We note that inquiry notice—

in securities fraud suits and otherwise—is alive and well in this Court.").  In the intermediate

appellate decision that preceded the Supreme Court's decision in *Merck*, the Third Circuit

clarified its then-existing standard for inquiry notice in securities fraud cases as follows: "[A]

probability, in the sense of a nearly certain likelihood, of wrongdoing is not necessary to trigger

storm warnings in this circuit.  Therefore, we reaffirm that 'whether the plaintiffs, in the exercise

of reasonable diligence, should have known of the basis for their claims depends on whether they had sufficient information of *possible* wrongdoing to place them on inquiry notice or to excite storm warnings of culpable activity.'" *See In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 543 F.3d 150, 164 (3d Cir. 2008) (emphasis added), *invalidated by*, 130 S. Ct. 1784 (2010).

After granting Merck & Co.'s petition for certiorari, the Supreme Court affirmed the ultimate conclusion that the plaintiff's claims were not barred by the statute of limitations but abrogated the "inquiry notice" standard employed by the Third Circuit. *Merck*, 130 S. Ct. at 1796–99. As the Supreme Court explained, "If the term 'inquiry notice' refers to the point where the facts would lead a reasonably diligent plaintiff to investigate further, that point is not necessarily the point at which the plaintiff would already have discovered facts showing scienter or other 'facts constituting the violation.'" *Id.* at 1797. The "inquiry notice" standard was rejected "[b]ecause the [securities fraud] statute contains no indication that the limitations period should occur at some earlier moment before 'discovery,' [such as] when a plaintiff would have *begun* investigating." *Id.* (emphasis in original).

Besides determining when the Plaintiffs were put on "inquiry notice," an alternative way of viewing the Third Circuit's decision in this case is that the court held that the statute of limitations began running as of August 5, 2001. Viewed in this light, under the law of the case doctrine, such a holding would be dispositive of Plaintiffs' claims against Cox and Pfizer. However, a district court may reconsider prior determinations from an appellate court when "a supervening new law has been announced." *In re City of Phila. Litig.*, 158 F.3d at 718. Therefore, to the extent that the Third Circuit's opinion in this case can be read as holding that the statute of limitations began to run on August 5, 2001, this determination is no longer binding

on this Court pursuant to the supervening new law announced in the Supreme Court's decision in *Merck*.

    C. *Did the Statute of Limitations Start to Run in August 2001?*

Having determined that the Third Circuit's opinion in this case does not mandate judgment on the pleadings in favor of Cox and Pfizer, the Court must next determine whether Defendants are otherwise entitled to the relief they seek.  As explained above, in deciding a Rule 12(c) motion, the Court must accept all of the well-pleaded factual allegations contained in the Plaintiffs' Amended Complaint and view these facts in the light most favorable to the Plaintiffs. *See, e.g.*, *Fowler*, 578 F.3d at 210–11.  On a Rule 12(c) motion, a district court may take into consideration an affirmative defense if such a defense "presents an insuperable barrier to recovery by the plaintiff."  *Flight Sys. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) (citing *Cont'l Collieries v. Shober*, 130 F.2d 631, 635–36 (3d Cir. 1942)).  This defect in the plaintiff's claim, however, must "appear on the face of the pleading."  *Cont'l Collieries*, 130 F.2d at 635–36; *see also Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (stating that this requirement is "critical").  Plaintiffs argue that, drawing all reasonable inferences in their favor from the facts alleged in the Amended Complaint, the Defendants cannot establish that Plaintiffs discovered, or reasonably should have discovered, facts constituting the element of scienter by August of 2001. The Court agrees.

As explained above, the statue of limitations in a securities fraud case does not begin to run until "discovery of the facts constituting the violation."  28 U.S.C. § 1658(b)(1).  "Facts" that

constitute a securities fraud "violation" include those facts establishing the element of scienter. *Merck*, 130 S. Ct. at 1796.[2]

Although the Supreme Court in *Merck* unquestionably rejected the "inquiry notice" standard that had previously existed in the Third Circuit, the Court did not fully articulate the outer bounds of the "discovery" rule. While the now-defunct "inquiry notice" standard required the known facts to show a mere "possibility" of scienter, *see In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 543 F.3d at 164, the "discovery" standard requires a more compelling showing. The Court does not believe, however, that "discovery" standard requires the known facts to show scienter with absolute certainty. *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (in pleading scienter, the inference drawn from the facts "need not be irrefutable"). Such a rule would be unworkable. *See Alaska Elec. Pension Fund*, 554 F.3d at 350 n.8 ("Corporations are, of course, unlikely to admit to culpable conduct . . . ."). Rather, the "discovery" rule provides that the statute of limitations will begin to run when a reasonably diligent plaintiff should have discovered facts permitting it to successfully plead a cause of action under the § 10(b) of Securities Exchange Act.[3] *See Merck*, 130 S. Ct. at 1796–97; *see also Steamfitters Local 499 Pension Fund v. Alter*, No. 09-4730, 2011 U.S. Dist. LEXIS 112499, at *16–17 (D.N.J. Sept. 30, 2011) (finding that, because plaintiff was unable to state a claim until it had evidence of scienter, the court could not hold as a matter of law that plaintiff's claims were barred by the statute of limitations on a motion to dismiss).

---

[2] Scienter refers to the "mental state embracing intent to deceive, manipulate, or defraud, and requires a knowing or reckless state of mind." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) (internal quotation marks and citations omitted).

[3] The Court notes that this issue has not been addressed by the Third Circuit or any district court within this circuit. However, the standard that the Court adopts today has been adopted by the United States Court of Appeals for the Second Circuit. *See City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011). Moreover, this standard is fully consistent with the Third Circuit's decision in *William A. Graham Co. v. Haughey*, 646 F.3d 138 (3d Cir. 2011), in which the court discussed the difference between the accrual of a cause of action and the "discovery rule." *See id.* at 147–51. The "discovery rule" is "grounded in the notion that it is unfair to deny relief to someone who has suffered an injury but who has not learned of it and cannot reasonably be expected to have done so," and it "operates in applicable cases to toll the running of the limitations period." *Id.* at 150–51.

In pleading scienter, the Private Securities Litigation Reform Act (PSLRA) requires that a plaintiff state "with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Avaya*, 564 F.3d at 252–53 (internal quotation marks, citations, and footnote omitted) (emphasis added). Therefore, whether the "discovery" of a scienter-related fact or scienter-related facts is sufficient to "constitute the violation," and thus whether discovery of those facts starts the running of the statute of limitations in this case, depends on whether those fact gives rise to a strong inference that the defendant acted with scienter.

Determining whether there is a strong inference of scienter requires a court to "weigh the plausible nonculpable explanations for the defendant's conduct against the inferences favoring the plaintiff. A strong inference of scienter is one that is cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Avaya*, 564 F.3d at 267. "The inference of scienter must be more than merely reasonable or permissible but need not be irrefutable." *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011) (quoting *Tellabs, Inc.*, 551 U.S. at 324) (internal quotations omitted). In determining whether a plaintiff has "discovered facts constituting the violation," each individual fact need not be looked at in a vacuum. *See Tellabs, Inc.*, 551 U.S. at 323. "The pertinent question is whether *all* of the facts . . ., taken collectively, give rise to a strong inference of scienter, not whether any individual [fact], scrutinized in isolation, meets that standard." *Avaya*, 564 F.3d at 267–68 (quoting *Tellabs, Inc.*, 551 U.S. at 323) (internal quotations omitted).

Viewed in light most favorable to Plaintiffs, the Washington Post article published in August of 2001 does not meet this standard. Although, as the Third Circuit held, this article showed the *possibility* that Defendants acted with scienter, this article did not raise a *strong inference* that Defendants had the necessary state of mind. At best, the Washington Post article shows facts indicating that Defendants made a materially false statement by withholding data

11

from the Journal of the American Medical Association ("JAMA").  Simply showing that a defendant has made a materially false statement is not alone sufficient to start the running of the statute of limitations in every case.  As the Supreme Court has explained, "certain statements are such that, to show them false is normally to show scienter as well."  *Merck*, 130 S. Ct. at 1797. In the context of a securities fraud allegation, however, "the relation of factual falsity and state of mind is more context specific."  *Id.*  Because this determination is context-specific, any pertinent fact may be taken into consideration by a court in deciding when the line was crossed from "inquiry notice" of scienter (i.e., when the facts would alert a reasonably diligent plaintiff of *possible* fraudulent intent) to actual "discovery" of scienter (i.e., when a reasonably diligent plaintiff should have discovered facts giving rise to a *strong inference* of fraudulent intent necessary to plead a valid claim).

Several factors militate against a finding that those facts contained in the Washington Post article show a strong inference of scienter on the part of the Defendants—especially when viewed in the light most favorable to the Plaintiffs for purposes of this motion.  First, the article provided Pharmacia's alleged reason for withholding the entire data-set by proposing a seemingly legitimate scientific reason for withholding the data—i.e., after six months, more patients withdrew from the comparison group, which biased the second half of the data.  (*See* Hynes Decl., Ex. 45) [324-1].  Moreover, Defendant Steven Geis is quoted as saying, "The intention really was not to be deceptive in any way.  People thought that six months was the appropriate analysis."  (*Id.*).  It is well-established in the Third Circuit that reassurances can dissipate investor's fear of malfeasance "if an investor of ordinary intelligence would reasonably rely on" those reassurances.  *Benak*, 435 F.3d at 402 n.16 (citation, alteration, and internal quotation marks omitted); *see also Avaya*, 564 F.3d at 267 (quoting *Tellabs, Inc.*, 551 U.S. at 324) (determining whether facts give rise to a strong inference of scienter "obliges courts to

12

weigh the 'plausible nonculpable explanations for the defendant's conduct'"). Nothing in *Merck* casts doubt upon the continued validity of taking reassurances into consideration, so long as a reasonable investor would do so. Second, the article noted that Pharmacia's decision was approved by a three-member executive committee, composed of authors of the study who were not Pharmacia employees.

Third, in a motion for summary judgment filed concurrently with this motion for judgment on the pleadings, Defendants themselves argue that the Washington Post article does not in any way show facts indicating Defendants' scienter. Specifically in relation to Defendant Geis, who is both one of the authors of the study and quoted in the August 2001 article, Defendants argue: "The presentation of the CLASS results reflect Dr. Geis's opinion and belief . . . that an analysis of the data . . . using six months worth of unconfounded data . . . would yield the most scientifically and clinically meaningful results." (Defs.' Mot. for Summary Jmt. Br. at 37) [324]. As Defendants put it, "a disagreement over the proper interpretation of the CLASS results"—which Defendants argue (by implication) is all that the Washington Post article shows—"cannot, as a matter of law, establish scienter." (*Id.*). In addition, regardless of what the article does or does not show as it relates to Geis, the article makes no mention of either Pfizer or Cox or whether either of these Defendants were aware of the misleading use of data.

Finally, according to Plaintiffs' Amended Complaint, "the market discounted *The Washington Post* article and Dr. Wright's claims such that Pharmacia's stock continued to trade at artificially inflated prices." (Am. Compl. ¶ 10). Courts in the Third Circuit have consistently taken market reaction into account when determining whether plaintiffs are put on notice of malfeasance. *See, e.g.*, *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 543 F.3d at 167–68 (3d Cir. 2008) (collecting cases). The Supreme Court's decision in *Merck* does not change this.

In sum, viewed in light most favorable to the Plaintiffs, the Washington Post article may have raised the possibility that Defendants acted with scienter, thus prompting a reasonable person to begin investigating. But, the facts contained in this article do not establish a strong inference that Defendants acted with the requisite intent. Defendants' argument that Plaintiffs were fully aware of all of the Defendants' *actions* at some earlier date misses the point, (*see* Defs.' Reply Br. at 6); the relevant consideration is whether Plaintiffs were aware (or reasonably should have been aware) of facts implicating Cox's and Pfizer's *state of mind*. Therefore, Defendants' motion must be denied. As noted earlier, the Washington Post article need not be looked at in isolation. In this case, however, the Third Circuit has already concluded that "[t]he totality of the evidence in the public realm as of February 2001 did not indicate a possibility of fraud or even hint at any malfeasance or intentional impropriety . . . ." *Alaska Elec. Pension Fund*, 554 F.3d at 350; *see also id.* at 349 ("Neither, in our view, does the content of the FDA staff reports [in February 2001] suggest fraud."). Consequently, even viewing the Washington Post article along with those facts that reasonably should have been known to Plaintiffs prior to the article's publication does not change the Court's determination. Plaintiffs' final argument—i.e., that their claims against Cox and Pfizer should relate back to the Original Complaint—need not be addressed.

## V.    CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings will be denied. An appropriate Order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: May 11, 2012

14