COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
ARTHUR C. LEAHY
KEITH F. PARK
SCOTT H. SAHAM
LUCAS F. OLTS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Counsel for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALASKA ELECTRICAL PENSION FUND, et al., On Behalf of Themselves and All Others Similarly Situated, <br><br>                     Plaintiffs, <br><br>vs. <br><br>PHARMACIA CORPORATION, et al., <br><br>                     Defendants. | No. 03-1519 (AET) **(Consolidated)** <br><br>CLASS ACTION <br><br>LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT <br><br>DATE:  None Set <br>TIME:  None Set <br>CTRM:  The Honorable <br>             Anne E. Thompson |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................... 1

III.   TERMS OF THE SETTLEMENT ................................................. 5

IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR
       PRELIMINARY APPROVAL ........................................................ 6

       A.    The Role of the Court in the Approval of a Class Action
             Settlement ............................................................................... 6

       B.    Factors to Be Considered in Granting Preliminary Approval .............. 7

             1.    The Proposed Settlement Represents a Fair, Reasonable,
                   and Adequate Outcome for All Class Members ........................ 7

             2.    The Amount of Requested Attorneys' Fees and Expenses
                   Falls Well Within the Range of Possible Approval .................. 8

             3.    The Proposed Settlement Enjoys a Presumption of
                   Fairness ........................................................................ 9

             4.    The Proposed Settlement is Fair, Reasonable, and
                   Adequate When the Risks of Continued Litigation are
                   Weighed ...................................................................... 11

             5.    Lead Plaintiffs Faced Serious Risks in Proving Liability,
                   Loss Causation, and Damages ....................................... 12

             6.    Lead Counsel Have Conducted Extensive Discovery
                   During the Course of This Litigation ................................ 14

       C.    Based on A Review of the Factors to be Considered at
             Preliminary Approval, the Proposed Settlement is Fair,
             Reasonable, and Adequate ..................................................... 15

V.     PROPOSED SCHEDULE OF EVENTS ...................................... 16

**Page**

VI.    CONCLUSION.............................................................................................. 17

745176_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armstrong v. Bd. of Sch. Dirs.,*
    616 F.2d 305 (7th Cir. 1980) ...................................................................... 10, 15

*Austin v. Pa. Dep't of Corr.,*
    876 F. Supp. 1437 (E.D. Pa. 1995) ................................................................. 10

*Careccio v. BMW of N. Am. LLC,*
    No. 08-2619, 2010 U.S. Dist. LEXIS 42063
    (D.N.J. Apr. 29, 2010) ................................................................................... 11

*Curiale v. Lenox Group, Inc.,*
    No. 07-1432, 2008 WL 4899474
    (E.D. Pa. Nov. 14, 2008) ......................................................................... 6, 7, 8

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) ...................................................................................... 13

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
    630 F. Supp. 482 (E.D. Pa. 1985) ................................................................. 10

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ..................................................................... 12, 14

*Hubbard v. BankAtlantic Bancorp, Inc.,*
    688 F.3d 713 (11th Cir. 2012) ....................................................................... 13

*In re Ins. Brokerage Antitrust Litig.,*
    282 F.R.D. 92 (D.N.J. 2012) ........................................................................... 9

*In re Rite Aid Corp. Sec. Litig.,*
    269 F. Supp. 2d 603 (E.D. Pa. 2003),
    *vacated on other grounds,*
    396 F.3d 294 (3d Cir. 2005) ............................................................................ 8

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005) ............................................................................ 8

- iii -

**Page**

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)................................................................. 9

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) .............................................. 10

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995) ............................................... 10

*O'Brien v. Brain Research Labs, LLC*,
   No. 12-204, 2012 U.S. Dist. LEXIS 113809
   (D.N.J. Aug. 9, 2012)................................................................... 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................... 11

*Phillips v. Scientific-Atlanta, Inc.*,
   No. 10-15910, 2012 U.S. App. LEXIS 18737
   (11th Cir. Sept. 6, 2012).............................................................. 13

*Protective Comm. for Indep. Stockholders of
TMT Trailer Ferry v. Anderson*,
   390 U.S. 414 (1968)..................................................................... 11

*Reed v. GMC*,
   703 F.2d 170 (5th Cir. 1983) ...................................................... 10

*Thomas v. NCO Fin. Sys., Inc.*,
   No. CIV.A 00-5118, 2002 WL 1773035
   (E.D. Pa. July 31, 2002)................................................................. 7

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)..................................................... 10, 11

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)........................................................................................... 1
   §78t(a) ........................................................................................... 1

745176_1

**Page**

Federal Rules of Civil Procedure
    Rule 23(e).................................................................................. 15
    Rule 23(e)(1)............................................................................. 6

## SECONDARY AUTHORITIES

5 James Wm. Moore, *Moore's Federal Practice*
    §23.83[1].............................................................................. 7, 15

Manual for Complex Litigation (4th ed. 2004)
    §21.632................................................................................. 6

## I.   INTRODUCTION

Lead Plaintiffs[1] respectfully submit this memorandum in support of preliminary approval of the parties' Stipulation of Settlement dated as of October 5, 2012 (the "Stipulation"), filed contemporaneously herewith.  The Stipulation provides for the payment of $164,000,000.00 for the benefit of the Class.  Plaintiffs request that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order").  The Notice Order will: (1) preliminarily approve the terms of the settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the settlement to the Class; and (3) schedule a Settlement Hearing at which the Court will consider the request for final approval of (a) the settlement set forth in the Stipulation, (b) the Plan of Allocation of settlement proceeds among Class Members, and (c) Lead Counsel's application for an award of attorneys' fees and expenses and Plaintiffs' expenses.

## II.   PROCEDURAL BACKGROUND

Between April 7 and May 14, 2003, six class action lawsuits were filed against Pharmacia Corporation ("Pharmacia" or the "Company") and others (collectively, the "Defendants") by Pharmacia stockholders alleging violations of the federal securities laws, namely §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange

---

[1]   All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation of Settlement dated as of October 5, 2012.

745176_1

Act"). The cases were consolidated before the Honorable Anne E. Thompson, in the United States District Court for the District of New Jersey, under the caption *Alaska Electrical Pension Fund, et al. v. Pharmacia Corporation, et al.*, No. 03-1519 (AET). By an Order dated August 5, 2003 (Doc. No. 32), the Court appointed the following plaintiffs as "Lead Plaintiffs" pursuant to the requirements of the Private Securities Litigation Reform Act of 1995: Alaska Electrical Pension Fund, City of Sarasota Firefighters' Pension Fund, International Union of Operating Engineers Local 132 Pension Plan, New England Health Care Employees Pension Fund and PACE Industry Union-Management Pension Fund. The Defendants are: Pharmacia, Pfizer Inc. ("Pfizer") and three individuals: Fred Hassan ("Hassan"), Pharmacia's former CEO and Chairman; Carrie Cox ("Cox"), Pharmacia's former President of Global Prescriptions; and G. Steven Geis ("Geis"), Pharmacia's former Group Vice President of Clinical Research.

Lead Plaintiffs allege, among other things, that between April 17, 2000 and August 5, 2001 (the "Class Period"), Defendants misrepresented the results of a clinical trial of Pharmacia's largest-selling product, an arthritis drug called Celebrex, by publicly discussing only the more favorable first six months of a trial that lasted over one year. Defendants vigorously contest these allegations.

On December 22, 2003, Defendants filed a motion to dismiss (Doc. No. 41) which the Court denied on May 19, 2004 (Doc. No. 49). Thereafter, Defendants answered (Doc. No. 54), denying all material allegations of Lead Plaintiffs'

- 2 -

Consolidated Complaint for Violation of the Federal Securities Laws (Doc. No. 37) and asserting defenses thereto.  On January 25, 2007, the Court entered an Order certifying the Class defined as: "all persons who purchased or otherwise acquired Pharmacia Corporation common stock during the period starting April 17, 2000 and ending February 6, 2001," inclusive of those dates (Doc. No. 137).  On May 31, 2007, Defendants moved for summary judgment arguing that the action was time-barred by the applicable statute of limitations (Doc. No. 145).  On October 30, 2007, the Court granted Defendants' motion for summary judgment (Doc. No. 182).  Lead Plaintiffs appealed, and on January 30, 2009, the Third Circuit Court of Appeals reversed the summary judgment in Defendants' favor, ruled that the appropriate ending date for the Class Period is August 5, 2001, and vacated and remanded for further proceedings (Doc. No. 210).

On January 31, 2012, Defendants filed a second motion for summary judgment arguing, among other things, that Lead Plaintiffs' claims should be dismissed because the allegedly omitted information was disclosed; Lead Plaintiffs cannot prove loss causation; and the Individual Defendants did not act with scienter and did not make the alleged misstatements (Doc. No. 324).  On that same date, defendants Pfizer and Cox also filed a motion for judgment on the pleadings claiming that they were not timely named as defendants (Doc. No. 322).  On May 14, 2012, the Court denied Pfizer and Cox's motion for judgment on the pleadings (Doc. No. 349).  At the time settlement was reached, Defendants' motion for summary judgment was pending.

- 3 -

745176_1

The Court had also set a date for trial of this matter of October 22, 2012 (Doc. No. 350).

As evidenced by the length of this litigation and the Court's granting of Defendants' initial summary judgment motion, Defendants vigorously have denied – and continue to deny – Lead Plaintiffs' allegations. For instance, in response to Lead Plaintiffs' claims that Defendants misrepresented and failed to disclose unfavorable Celecoxib Long-term Arthritis Safety Study ("CLASS") results, Defendants contend that they repeatedly disclosed that Celebrex did not meet its primary endpoint in the CLASS study. Defendants also contend that their announcements regarding CLASS were not misstatements, but instead were good-faith scientific judgments supported by sound analysis and properly reported to the U.S. Food and Drug Administration.

Also of major concern for Lead Plaintiffs was proving loss causation and damages. Lead Plaintiffs alleged that in response to the unfavorable announcement of the 13-month CLASS results, the price of Pharmacia stock declined 9% over three days. Defendants, however, contend that the large drop that occurred on the third day following the announcement of these results cannot be attributable to the corrective disclosure. And though Lead Plaintiffs believed that they had submitted sufficient evidence on this point, the possibility that the case would again be dismissed at summary judgment – or potential damages greatly reduced – was real.

Moreover, the allegations in this case involved complex scientific and economic claims and defenses in which the parties have leaned – and presumably would

- 4 -

continue to lean – heavily on expert testimony.  Accordingly, the ensuing "battle of experts" would increase the risks and costs for both sides.  Furthermore, even if Lead Plaintiffs were able to survive the pending summary judgment motion with damages fully intact, an expensive and time consuming trial would have followed, which if Lead Plaintiffs were successful, would likely have resulted in an appeal of the jury verdict.  And though confident in their evidence regarding liability, loss causation and damages, Lead Plaintiffs fully appreciate that advancing the Litigation forward poses serious risk for the Class.

Given these facts, with the assistance of a nationally recognized mediator, United States District Judge Layn R. Phillips (Ret.), the parties were able to reach a resolution and thus avoid the expense, delay and risk associated with further proceedings regarding these complex issues.  The parties engaged in two in-person mediation sessions with Judge Phillips and numerous telephonic exchanges regarding a potential settlement of the Litigation.  Ultimately, the parties agreed to settle the action based upon the proposal made by Judge Phillips.

## III.    TERMS OF THE SETTLEMENT

The settlement set forth in the Stipulation resolves the claims of the Class against the Defendants.  Lead Plaintiffs and their counsel have diligently litigated this action and after extensive arm's-length negotiations have reached an agreement to settle this Litigation for $164,000,000.00 in cash.  The bulk of this amount will be deposited into an escrow account following entry of a judgment by the District Court.

- 5 -

Lead Plaintiffs and their counsel have concluded, after a thorough investigation of the factual and legal issues in the Litigation, in particular the factual and legal defenses raised by Defendants regarding loss causation and damages, as well as the expense and risk of continued litigation, that under the circumstances the settlement is an excellent result and is in the best interests of the Class.

## IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

### A.    The Role of the Court in the Approval of a Class Action Settlement

Federal Rule of Civil Procedure 23(e)(1) requires court approval of any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class. This involves two stages: preliminary approval followed by notice to the class, and then final approval after hearing. *Curiale v. Lenox Group, Inc.*, No. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008) (citing *Manual for Complex Litigation* §21.632 (4th ed. 2004)).

At this juncture, the parties request only that the Court grant preliminary approval of the settlement so that notice may be sent to the Class. The Court will have before it more extensive pleadings submitted in support of the proposed settlement at the final settlement hearing and will then be asked to make a determination as to whether the settlement is fair, reasonable and adequate, and should be finally approved. The determination of whether the proposed settlement is fair, reasonable, and adequate is made only after notice of the settlement has been given to the

- 6 -

Members of the Class and after they have been given an opportunity to voice their views of the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

**B.     Factors to Be Considered in Granting Preliminary Approval**

A number of factors should be considered in evaluating a settlement for purposes of preliminary approval. No one factor should be determinative, but rather all factors should be examined. These criteria have been summarized as follows:

> "In evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute." Instead, the court must determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval. . . ." This analysis often focuses on whether the settlement is the product of "arms-length negotiations."

*Curiale*, 2008 WL 4899474, at *4 (citations omitted); *accord Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002).

As shown below, the settlement meets all of these criteria. Moreover, preliminary examination of the criteria for final approval supports this conclusion.

**1.     The Proposed Settlement Represents a Fair, Reasonable, and Adequate Outcome for All Class Members**

First, there are no "'deficiencies'" in the settlement such as "'unduly preferential treatment of class representatives or of segments of the class, or excessive

- 7 -

745176_1

compensation for attorneys.'" *Curiale*, 2008 WL 4899474, at *4 (citation omitted). The Lead Plaintiffs are treated in the same manner as the other Class Members, and their *pro rata* share of recovery will be based upon the amount of shares purchased and the time of purchase, in accordance with the Plan of Allocation.

### 2. The Amount of Requested Attorneys' Fees and Expenses Falls Well Within the Range of Possible Approval

The requests for attorneys' fees and expenses are in line with awards that have been made in numerous other cases, and the settlement is not contingent upon the Court's adoption of any particular fee or expense award.

Indeed, the requested fee falls within the ranges of studies relied on by the district court in *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 610 (E.D. Pa. 2003), *vacated on other grounds*, 396 F.3d 294 (3d Cir. 2005).  As the Third Circuit noted in *Rite Aid*:

> In comparing this fee request to awards in similar cases, the District Court found persuasive three studies referenced by Professor Coffee: one study of securities class action settlements over $10 million that found an average percentage fee recovery of 31%; a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a median percentage recovery range of 27-30%; and a third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard."  We see no abuse of discretion in the District Court's reliance on these studies.

396 F.3d at 303 (citation omitted).

- 8 -

Accordingly, Lead Counsel's attorneys' fee request of 27.5% of the proposed $164 million settlement amount falls squarely in the middle of the 25%-30% range considered by the Third Circuit to be fairly standard for class action settlements between $100 million and $200 million.

Moreover, Lead Counsel have aggressively pursued this Litigation for almost ten years, including the successful appeal of the Court's grant of Defendants' motion for summary judgment. During this time, Lead Counsel have undertaken extensive discovery efforts (including the review of millions of pages of documents and attending over 50 depositions) and fended off Defendants' numerous attacks to Lead Plaintiffs' allegations.

Given the foregoing, Lead Counsel's request for a fee equal to 27.5% of the recovery is fair and reasonable.

### 3.     The Proposed Settlement Enjoys a Presumption of Fairness

Courts have held that "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (citing *In re Warfarin Sodium*

*Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).[2]  Here, the settlement is the result of arm's-length negotiations conducted by experienced counsel.  Courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995).[3]  Here, Lead Counsel have extensive experience in securities litigation, and believe that this settlement is fair, reasonable, and adequate in light of the circumstances of this Litigation.  The parties also participated in two in-person mediation sessions and a litany of telephone conversations with Judge Philips.  Indeed, Judge Philips' mediation services played an integral role in settling the action, and the parties ultimately relied on the Mediator's proposal submitted by Judge Philips in reaching an agreement.

---

[2]     Lead Plaintiffs will address objections, if any, in their final papers after the Class Members have had an opportunity to review the Notice and assess the proposed settlement.

[3]     *See also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

745176_1

4.     **The Proposed Settlement is Fair, Reasonable, and Adequate When the Risks of Continued Litigation are Weighed**

The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'" *Weinberger*, 698 F.2d at 73 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968)). "When evaluating the fairness of settlements, courts have held that 'full compensation is not a prerequisite for a fair settlement.'" *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809, at *44 (D.N.J. Aug. 9, 2012) (quoting *Careccio v. BMW of N. Am. LLC*, No. 08-2619, 2010 U.S. Dist. LEXIS 42063, at *17 (D.N.J. Apr. 29, 2010)).  An evaluation of the costs and benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Here, $164,000,000.00 has been obtained for the Class in the face of a determined defense that, if successful, would have precluded any recovery at all.

5.   **Lead Plaintiffs Faced Serious Risks in Proving Liability, Loss Causation, and Damages**

The risk of establishing liability is another factor the courts consider in determining the fairness of a settlement. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Lead Plaintiffs allege that Defendants misrepresented and withheld material information regarding the Celebrex CLASS study. Lead Plaintiffs also allege that Defendants only reported six months of favorable data instead of reporting data for the entire 13-month period of the CLASS study. Defendants vehemently denied any and all liability, alleging that the statements about which Lead Plaintiffs complain were not false at the time they were made and were in fact supported by scientific evidence. As a result, Defendants assert that Lead Plaintiffs could not establish that Defendants made any actionable false or misleading statements with the requisite scienter required under the federal securities laws. Thus, proving liability at summary judgment and trial was a difficult and complex proposition.

Moreover, even if Lead Plaintiffs could establish liability, additional risks would remain in establishing damages. The determination of damages at trial would be a complicated and uncertain process involving conflicting expert testimony. The testimony of Lead Plaintiffs' and Defendants' damage experts would likely vary substantially, and in the end, this crucial element at trial would be reduced to a "battle of experts." Such a battle would serve to increase the expense – as well as the element of risk – involved with advancing the litigation further toward trial.

- 12 -

The issue of loss causation would also be a matter of significant dispute even after the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The Supreme Court's decision in *Dura* and subsequent cases interpreting *Dura* have made proving loss causation even more difficult and uncertain than in the past. For instance, in the last few months alone, two circuit court opinions have disposed of plaintiffs' claims after years of litigation. In *Phillips v. Scientific-Atlanta, Inc.*, No. 10-15910, 2012 U.S. App. LEXIS 18737 (11th Cir. Sept. 6, 2012), after prevailing on defendants' motion to dismiss and successfully certifying a class, and litigating the case for 11 years, the Eleventh Circuit affirmed the district court's decision to grant defendants' motion for summary judgment on loss causation grounds. Similarly, in *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the appellate court affirmed the district court's post-trial decision granting defendants' motion for judgment notwithstanding the verdict for failure to prove loss causation effectively stripping plaintiffs of a favorable jury verdict after a four-week trial. Here, Lead Plaintiffs faced the serious possibility that summary judgment would be granted on loss causation grounds or that damages would be severely curtailed by the Court's summary judgment ruling. Defendants advanced the argument that Pharmacia's stock price did not immediately react to the announcement regarding the CLASS study, which they argue does not support a finding of loss causation. And though Lead Plaintiffs were confident of their loss causation evidence, proceeding forward with the litigation posed significant risks to the Class Members, including the

- 13 -

real possibility that summary judgment would once again be granted, and/or potential damages would be greatly curtailed.

In short, Lead Plaintiffs faced numerous obstacles in proving Defendants were liable and establishing causation and damages.   There was no certainty, given Defendants' vigorously asserted defenses, that Lead Plaintiffs would prevail on either liability or damages.  The proposed settlement eliminates these and many other risks of continued litigation.

### 6.     Lead Counsel Have Conducted Extensive Discovery During the Course of This Litigation

"'[T]he stage of the proceedings and the amount of discovery completed'" is another factor which courts consider in determining the fairness of a settlement. *Girsh*, 521 F.2d at 157 (citation omitted).  Here, Lead Counsel propounded numerous document requests on Defendants and subpoenaed approximately 99 parties seeking documents.  Lead Plaintiffs reviewed and analyzed over 4 million pages of documents that were produced by Defendants and third parties, attended 51 depositions, consulted with 6 of the foremost experts in their fields, conducted expert discovery, including the depositions of all 6 of Defendants' experts, fully briefed summary judgment and prepared the case for an October 22, 2012 trial.  In short, there can be no question that at the time the settlement was reached, Lead Counsel had a clear view of the strengths and weaknesses of the Class's claims.

- 14 -

745176_1

C.   **Based on A Review of the Factors to be Considered at Preliminary Approval, the Proposed Settlement is Fair, Reasonable, and Adequate**

Lead Counsel firmly believe the settlement merits final approval.  However, at this time the Court is only being asked to permit notice of the terms of the settlement to be sent to the Class and schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members on the fairness of the settlement set forth in the Stipulation.  Moore, *supra*, §23.83[1], at 23-336.2 to 23.339.

There can also be no question that the settlement proposed is the product of serious, informed, non-collusive negotiations and well within the range of possible approval, and does not have any obvious deficiencies.  This settlement was reached only after Lead Counsel diligently prosecuted the claims of the Class.  Based upon Lead Counsel's familiarity with the factual and legal issues of this Litigation, Lead Counsel were ultimately able to negotiate an excellent result for the Class, taking into account the cost, delay, and risk of trial.

Thus, preliminary consideration of some of the factors considered by courts in the Third Circuit in granting final approval of class action settlements lends support to the parties' belief that this settlement is well "within the range of possible approval." *Armstrong*, 616 F.2d at 310.

- 15 -

## V.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs propose the following schedule of events leading to the Settlement Hearing:

| | |
|---|---|
| Notice mailed to the Class (the "Notice Date") | 14 days after the Notice Order is signed |
| Summary Notice published | 10 days from the Notice Date |
| Date by which to file papers in support of the settlement, Plan of Allocation and request for attorneys' fees and expenses | 45 days prior to Final Approval Hearing |
| Last day for Class Members to opt-out or object to the settlement | 25 days before the Final Approval Hearing |
| Date by which to file reply papers in response to objections or comments to the settlement, Plan of Allocation, or request for attorneys' fees and expenses | 10 days prior to Final Approval Hearing |
| Final Approval Hearing | 90 days from the Notice Date |
| Last day for Class Members to file Proof of Claim forms | 90 days from the Notice Date |

745176_1

## VI.    CONCLUSION

For the reasons set forth above, the proposed settlement warrants this Court's

preliminary approval.

DATED:  October 5, 2012                    Respectfully submitted,

                                           COHN LIFLAND PEARLMAN
                                             HERRMANN & KNOPF LLP
                                           PETER S. PEARLMAN


                                                  s/ Peter S. Pearlman
                                           _____
                                               PETER S. PEARLMAN

                                           Park 80 West – Plaza One
                                           250 Pehle Avenue, Suite 401
                                           Saddle Brook, NJ  07663
                                           Telephone:  201/845-9600
                                           201/845-9423 (fax)

                                           Liaison Counsel

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           PATRICK J. COUGHLIN
                                           ARTHUR C. LEAHY
                                           KEITH F. PARK
                                           SCOTT H. SAHAM
                                           LUCAS F. OLTS
                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)

SCOTT + SCOTT LLP
CHRISTOPHER M. BURKE
MATTHEW P. MONTGOMERY
DAVID H. GOLDBERGER
707 Broadway, 10th Floor
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)

MOTLEY RICE LLC
JOSEPH F. RICE
LANCE V. OLIVER
JOSHUA C. LITTLEJOHN
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

Counsel for Plaintiffs

SUGARMAN & SUSSKIND
ROBERT SUGARMAN
2801 Ponce De Leon Blvd., Suite 750
Coral Gables, FL  33314
Telephone:  305/529-2801
305/447-8115 (fax)

Additional Counsel for Plaintiffs

745176_1